8b 147
95  17
8b 147
99  61

CASE 29—PETITION—SEPTEMBER 20.

## Sherley, &c. v. Billings.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. PASSENGER CARRIERS' LIABILITY FOR WILLFUL TORTS OF THEIR SERVANTS.

OWNERS OF A STEAMBOAT ARE LIABLE FOR AN ASSAULT UPON A PASSENGER BY THE THIRD CLERK OF THE BOAT.—A boy about fifteen years of age, while a deck-passenger on the steamboat Ben Franklin, plying between Louisville and Cincinnati, was assaulted and stricken down by the third clerk of the boat, and, among other injuries received, one of his eyes was totally destroyed. The jury returned a verdict, and the court rendered a judgment against the owners of the boat for forty-four hundred dollars, *as compensatory damages. That judgment is affirmed.*

2. Common carriers of passengers are held to the strictest responsibility for care, vigilance, and skill on the part of themselves and those employed by them.

3. They are required to behave toward their passengers with civility and propriety, and to have servants and agents competent for their several employments; and for the default of their servants or agents in any of the above particulars, or generally in any other points of duty, the carrier is directly responsible. (2 Parsons on Contracts, 5th edition, page 225.)

4. The carrier must not only protect his passengers against the violence and insults of strangers and co-passengers, but *a fortiori* against the

violence and insults of his own servants. If this duty is not performed, if this protection is not afforded, but on the contrary the passenger is assaulted and insulted through the negligence or willful misconduct of the carrier's servant, the carrier is necessarily responsible. (Goddard v. Grand Trunk Railway, 57 Maine, 202.)

5. The compensation the carrier receives from the passenger is not only in consideration that he will transport him from one point to another as may be agreed upon, but that during the time he is so transporting him reasonable dilligence will be used to protect him from insult and injury.

6. It results necessarily that the contract between the carrier and the passenger must guarantee immunity to the passenger from violence at the hands of those whose duty it is to afford this stipulated protection.

7. Res gestæ.—Evidence was properly admitted detailing remarks which were essentially a part of the *res gestæ*. These remarks were made to the defendant during and immediately after the assault by two of the witnesses who rescued the boy from the brutal attack of the defendant.

8. Forty-four hundred dollars compensatory damages recovered in this case for the loss of an eye, etc., is held not to be excessive.

It was the province of the jury by their verdict to compensate the outraged passenger not only for the loss of his eye, but for the mental sufferings caused by the indignities to which he was subjected.

I. & J. CALDWELL, ⎫
HAMILTON POPE,  ⎬ . . . . . . . . For Appellants,

CITED

Story on Agency, sections 314, 318, 316, 454, page 616.
Salk. 282, Middleton v. Fowler.
Revised Statutes, section 2, chapter 7, 1 Stanton, 202.
Am. Law Reg. 621, Oct. 1870, Little Miami R. R. v. Wetmore.
Smith on Master and Servant, 157.
Shearman & Redfield on Negligence, secs. 55, 59–66, 261–263.
Hail & Colt, 541, Simpson v. London General Omnibus Co.
Angell on Carriers, section 604 and note 4.
2 Comstock, 479, Vanderbilt v. Richmond Turnpike Company.
19 Wendell, 345, Wright v. Wilcox.
1 East. 67, McManus v. Crickett.
16 B. Monroe, 582–3, Kountz v. Brown.
1 B. Monroe, 96, Ferguson v. Terry.
1 Taunton, 568, Bouche v. Wordston.
10 Ohio, 583.                    11 Ohio, 381.
2 Queen's Bench, 535, Poulton v. London & S. W. R. R. Co.

Sherley, &c. v. Billings.

1 Blackstone, Chitty's edition, 431, notes 24 and 26.
1 Monroe, 130, Hallowell v. Hallowell.
2 Kent's Commentaries, side pages 259, 260.
10 Wisconsin, 393, Milwaukie Railroad v. Finney.
12 Allen, 35, Howe v. Newmarch.
8 Barb. 368, Brand v. Railroad.
4 Gray, 465, Moore v. Railroad.
7 H. & N. 355, Seymour v. Greenwoood.
42 Pennsylvania, 365, Pennsylvania Railroad Co. v. Vandiver.
17 New York, 364, Weed v. Railroad.
7 Am. Law Register, new series, 14, Railway v. Hinds.
14 Howard, 468, Railroad v. Derby.
34 Connecticut, 554, Flint v. Transportion Company.
1 Clifford, 145, Nieto v. Clark.

CLEMMONS & WILLIS, . . . . . . . . . For Appellee,

CITED

Am. Law Reg., January, 1871, Goddard v. Grand Trunk R. R.
Shearman & Redfield on Negligence, sections 266, 2, 59, 65.
Parsons on Contracts, 696, *et seq.*
Story on Agency, section 452.
Smith on Master and Servant, 152.
Abbott on Shipping, 211.
Angell & Ames on Corporations, section 388.
Revised Statutes, section 2, chapter 7, "Boats and Navigation."
Civil Code, sections 46, 451.
Angell on Carriers, section 572.
4 Metcalfe, 49, Farwell v. Boston.
5 Duer, 193, Weed v. Panama R. Co.
36 New York, 378, Merrick v. Eighth Av. R. Co.
1 Duer, 253, Caldwell v. Murphy.
49 Maine, 279, Edwards v. Lord.
16 Illinois, 538, Galena & Chicago Railroad Company v. Fay.
17 B. Monroe, 110, Hawkins & Co. v. Riley.
34 New York, 87, N. Y. & N. H. R. R. Co. v. Schuyler, &c.
12 Mod. 472, 490.
14 Howard, 487, Philadelphia & Reading Railroad Co. v. Derby.
9 Car. & Payne, 607, Sleath v. Wilson.
15 Arkansas, 118, Duggins v. Watson.
1 H. & C. 526, Limpus v. London Omnibus Company.
21 Howard, 202, Philadelphia & Baltimore Railroad v. Quigley.
6 Jurist, new series, part 2, page 143.
17 New York, 362, Weed v. Panama Railroad.

16 B. Monroe, 582, Kountz v. Brown.
9 Dana, 468, Smith v. Shackleford.
3 Mason, 243, Chamberlain v. Chandler.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

Charles H. Billings, a boy about fifteen years of age, while a deck-passenger on the steamer Ben Franklin, was assaulted and stricken down by an officer of the boat, and, among other injuries received, one of his eyes was totally destroyed.

This suit against Sherley and others, owners of the Ben Franklin, was brought by appellee to recover damages for the injuries thus sustained at the hands of their officer and employee. A trial resulted in a verdict in his favor for the sum of four thousand four hundred dollars. Judgment was rendered upon this verdict, and a motion for a new trial having been overruled, appellants have prosecuted this appeal.

The third clerk of the boat, one Williams, was charged with the duty of collecting the passage-money due from the deck-passengers. While engaged in the performance of this duty he approached Billings and demanded his fare, which was promptly paid. The clerk immediately charged him with having hidden under the boilers, and the charge being denied, the assault was instantly made and the injuries complained of inflicted.

Appellants deny their responsibility as owners of the boat and employers of this officer for the consequences of his willful and unauthorized tort; insisting that the act complained of was not done by the clerk in the discharge of any duty imposed upon him by the terms of his employment, nor under authority from them, either express or implied, and that it has not been ratified by them by the retention in their employ of such officer.

They complain that the court below erred as to the law of the case, and not only misinstructed the jury, but permitted improper testimony to be heard and considered.

A brief review of the principles by which the rights of the parties to this action must be determined will enable us the more readily to test the legal accuracy of the instructions given and refused on the trial.

Ordinarily the master is not liable to answer in a civil suit for the wrongful or tortious act of his servants, unless it is done in the course of his employment. If the servant goes beyond the scope of his employment he is as much a stranger to his master as to any third person, and his acts can in no sense be regarded as the acts of his master. It is not enough that the trespass be committed while the relation of master and servant exists; nor that the servant is then engaged in the business of his master; he must at the time be acting for him and in his name. The difficulty in this case grows out of the application of these principles to the facts presented by the record. Where there has been no statutory modification of the common law, and where the party injured is a stranger to the master, having no claims upon him for protection from insult or injury, he is no more responsible for the action of the servant, not done with his assent nor within the scope of his employment, than for the actions of a mere stranger.

In this case the appellants are common carriers of passengers. They do not undertake absolutely to insure the safety of those subjecting themselves to their control; but the law holds them to "the strictest responsibility for care, vigilance, and skill on the part of themselves and those employed by them." They are required to behave toward their passengers "with civilty and propriety, and to have servants and agents competent for their several employments, and for the default of [their] servants or agents in any of the above particulars, or generally in any other points of duty, the carrier is directly responsible." (2 Parsons on Cont., 5th ed., 225.)

Every individual who commits his person to the custody and government of others has the right to expect from them

the highest practicable degree of care and skill. So likewise has he the right to expect protection from injuries or outrages at the hands of strangers or of fellow-passengers, if by the use of reasonable foresight such injuries could have been anticipated and averted. This protection passengers upon steamboats must receive from the officers of the vessels, and it is one of the stipulations of the implied contract between the carrier and the passenger that such protection shall be afforded by these officers. They represent the carrier, are selected by him, and it is his imperative duty to see that the passenger is treated by them with "civility and propriety."

If these officers fail to use reasonable diligence in the protection of the passenger from injuries at the hands of strangers or other passengers the contract is violated, and the carrier can be held responsible for such damages as the injured passenger may have sustained by reason of such failure. To our minds both the reason and philosophy of the law demands that such contract shall protect the passenger from injuries and insults at the hands of those who, for the time being, are intrusted with the custody of his person.

As held by the Supreme Court of Maine in a recent case : "The carrier must not only protect his passengers against the violence and insults of strangers and co-passengers, but *a fortiori* against the violence and insults of his own servants. If this duty is not performed, if this protection is not afforded, but on the contrary the passenger is assaulted and insulted through the negligence or willful misconduct of the carrier's servant, the carrier is necessarily responsible." (Goddard v. Grand Trunk Railway Company, American Law Register, January, 1871, 57 Maine, 202.)

A due regard for the safety and comfort of the traveling public demands that the contract between the carrier and his passengers shall be so construed, and in cases of its violation in this regard that the aggrieved party shall receive adequate

Sherley, &c. v. Billings.

compensation for any injury he may sustain by reason thereof. To the agents the carrier himself selects, and of whose character the public can know but little, is committed the custody of women and children, separated in many instances for the time from their natural protectors. To these agents these helpless classes of the community must of necessity look for protection from insult and security from personal danger. An enlightened public policy requires the courts to so apply well-established principles of law as to secure this protection, and at the same time not to disregard the rights of the carrier.

But as the compensation he receives from the passenger is not only in consideration that he will transport him from one point to another, as may be agreed upon, but of the further fact that during the time he is so transporting him reasonable diligence will be used to protect him from insult and injury, it seems to us that it results necessarily that the contract must guarantee immunity from violence at the hands of those whose duty it is to afford this stipulated protection. This conclusion, in our opinion, not only does not conflict with but is in substantial accord with the principle of law that exonerates the master from responsibility on account of the willful tort of the servant, not committed in the course of his employment, nor while acting without the scope of his authority.

It must be borne in mind that from the moment the contract between the carrier and passenger begins until it ends the official actions of the officers of the boat touching the payment of passage-money, or the manner in which the passengers shall conduct themselves, or the enforcement of the regulations prescribed for the government of the vessel—in short, all intercourse between the officers and passengers naturally and legitimately growing out of the relationship existing between them—may properly be said to come within the course of their employment, and their actions in the premises, if legal and proper, are within the scope of their authority.

In this case Williams, the clerk, at the time of the assault was engaged in collecting from the deck-passengers the passage-money due from them. The amount due from Billings had actually been handed him; but before they separated, and almost simultaneously with the payment, the charge upon the passenger of having hidden under the boilers was made, and immediately thereafter the injuries inflicted. The entire affair was substantially one transaction. An appreciable interval of time may have intervened between the reception of the money and the assault, but it can not be said that the officer was not at the time engaged in the discharge of a prescribed duty. He was charged with the collection of the passage-money from Billings; and whether he had or not the right to inquire as to his conduct in reference to the alleged hiding under the boilers, he was at the time discharging "a supposed or pretended duty."

Such seems to have been the opinion of the judge of the common pleas court, and this was doubtless his reason for refusing to give instructions Nos. 1 and 2, as asked by appellants. These instructions are evidently based upon the theory that the responsibility of the appellants to Billings was no greater than it would have been had the latter been a mere stranger instead of a passenger upon their boat. As has been seen this theory is incorrect, hence the court did not err in refusing to give those instructions.

The first instruction given upon the motion of the appellee is unexceptionable; the second is a correct exposition of the law, and if objectionable at all it is because it may be regarded to some extent as abstract; but modified as it is by the third instruction given for appellants, it could not possibly have operated prejudicially to them.

It is complained that it was error to permit that portion of the depositions of the witnesses Lowry and Ashcraft, in which they detail the remarks they made to Williams when they were

rescuing the appellee from his brutal attack, to be read to the jury. These remarks were made during and immediately after the assault, and were essentially a part of the *res gestœ.* They explained the character of the attack, and exhibited in a clear and striking light the wickedness and depravity of the agent to whose care and custody the personal safety of the appellee had been intrusted. It was the province of the jury by their verdict to compensate the outraged passenger not only for the loss of his eye, but for the mental sufferings caused by the shameful indignities to which he was subjected; and to enable them to do this it was necessary that all the particulars of the transaction should be disclosed. It results therefore that this evidence was properly permitted to go to the triers of the cause.

This conclusion does not conflict with the rule laid down by this court in the case of Hallowell v. Hallowell, 1 Monroe, 132. In that case the plaintiff desired to prove "aggravating and provoking language" used by the defendant *after the combat was over.* In this the testimony objected to relates solely to the assault and the rescue of the complaining party. There is also this further difference. The opprobrious and insulting language used by Williams to the appellee before and after the assault was of itself a violation of his principal's contract, and went to make up the outrage and injury for which the appellee was entitled to recover. This language could not have been understood if the replies of the two witnesses had been excluded, and it would have been the merest farce to have disconnected what Williams said from the replies made by those who were at the time interfering to protect the appellee from his violence.

It can not be said that the damages are excessive. The jury were instructed that they could not give exemplary damages, and when all the circumstances of the case are considered the verdict can scarcely be regarded as compensatory. It appears

that after the injuries were inflicted neither the master nor any of the officers of the boat (except the two engineers) took any steps whatever to alleviate the sufferings of the appellee, and that he was permitted to remain upon a passenger packet plying between the cities of Louisville and Cincinnati without medical or other attention. Such culpable neglect of a passenger, had the carrier been in nowise responsible for the injury, would of itself have authorized a recovery. Believing that the law has been correctly administered, and that nothing more than substantial justice has been done, this court will not disturb the finding of the jury.

Judgment affirmed.