### JOHN DILS, JR. *v.* HENRY MAY.

[Kentucky Law Reporter, Vol. 3—765, as Dills v. May.]

**Declarations a Part of the Res Gestae.**

> All declarations, made at the same time the main fact under consideration takes place and which are so connected with it as to illustrate its character, are admissible as original evidence; but where one who is charged with participating in a tort in plundering a store, comes into town where the store is with the plunderers, but takes no part in aiding them and during such plundering is in another part of the town protesting against the act, and on being asked by the plunderer to loan him his horse refuses to do so, declaring that his horse will not be used to carry off stolen property, and that it will not be used for such purpose so long as his pistol will fire, etc., and such declarations are not shown to be made other than in good faith, they are admissible in evidence as a part of the res gestae.

### APPEAL FROM PIKE CIRCUIT COURT.

April 25, 1882.

OPINION BY JUDGE HARGIS:

This is the second appeal in this case. On the first trial a verdict was rendered for the appellant, but the judgment was reversed at appellee's instance. A second trial was had, which resulted in a verdict for the appellee, and the court having rendered a judgment thereon, dismissing appellant's action, he brings this appeal here seeking a reversal, on the grounds that incompetent evidence was admitted and a suppressed deposition allowed to be read to the jury. See *May v. Dills,* 10 Ky. Opin. 225.

The action was for an alleged participation by appellee in a tort committed by Menifee and his band in the year 1862. It appears that Menifee, with his men, entered Piketon in August of that year, and rifled the store of the appellant, taking from it several thousand dollars worth of goods, and that the appellee had voluntarily or accidentally fallen in with Menifee and come with him to Piketon, and was there when the tort was committed. The testimony relative to appellee's participation in it is conflicting, and with its weight we have nothing to do, as it is sufficient to sustain the verdict, if no illegal evidence has been admitted.

The principal error insisted on is that evidence of what appellee stated after the foragers had reached Piketon, and while they were engaged in robbing the store, was hearsay and therefore incompetent.  Mrs. Cecil testified this: "I was at home at upper end of Piketon; saw Henry May about two hours after night or just before Dils passed out of town; May was at our house; during his stay two men came and said Menifee wanted H. May's horse to carry a load on; May replied and said his horse could not carry stolen goods; May left our house in a few minutes."

The evidence of James L. Ratcliff was to the same effect, with this addition, that Menifee's men threatened to press May's horses, and the latter replied to them that "Col. Menifee can't press them as long as my pistol will fire," and they did not press his horses.  Lockard testified that "May came down the walk; I met him at the door (of Hamilton House); Mrs. Hamilton said to May: 'They are making the goods fly.' 'Yes,' he says, 'they ought not to do it.'"  These conversations occurred a short distance from the store and while Menifee's men were plundering it. Was this testimony of the res gestae, and if so was it admissible? The general rule is that all declarations, made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being what is termed a part of the res gestae, in other words, a part of the thing done.  1 Greenleaf Evidence, § 108, says that when a person does any act material to be understood, "his declarations, made at the time of the transaction, and expressive of its character, motive, or object, are regarded as 'verbal acts, indicating a present purpose and intention,' and are therefore admitted in proof like any other material facts."

The nature of the alleged tort is not the only thing to be determined by the declarations of the appellee, who is charged to have incited or aided in its commission; they are admissible to show the intention with which he did any act whereby his connection with the tort is sought to be established.  In this case the character of the act of taking the goods is undisputed.  It was a tort, but the acts of the appellee in traveling with Menifee and his band to Piketon, and what he said of any acts he may have done while there during the perpetration of the tort, is competent as illustrative of his movements and presence and explain his mo-

tive and object. While the taking of the goods was tortius, and all persons who advised or engaged in it responsible in damages therefor, from which they could not exempt themselves by contemporaneous statement, contrary to the legal nature of their acts, the real issue here is whether the appellee can be held liable, not by reason of the actual taking, but because of his presence as an aider or abettor.

His presence was not necessarily a guilty presence. It may have been from accident, duress, or with the purpose of protecting persons and property, and marked by the best of intentions; and consequently all his declarations, tending to explain his presence, which was not in itself unlawful, made simultaneously with that presence, were admissible evidence as part of the res gestae or acts done by him, and furnish the best if not the only clue to his motive.

It does not follow that the appellee participated or aided in the commission of the tort, from the fact that the goods were taken and he was present, because while the taking was unlawful his presence may have been lawful, and his declarations which throw light on his motive do not therefore render legal what is otherwise necessarily illegal, as supposed by counsel. His silent presence would have tended to connect him with the tort, but, illustrated by the words he then uttered, such an inference was unauthorized; hence the great importance, in a case like this, of treating the words of the actor as part of his acts.

Had he actually broken open the store, or assisted in conveying away the goods, but declared, while doing so, that his purpose was innocent, he would, nevertheless, have been legally liable for the tort. So if he came to Piketon to encourage the taking, and his object in being there was to give countenance to the wrongdoers, his deceitful declarations, made for the purpose of disguising the real object of his presence, could not exempt him from liability; but in all cases, where declarations have been made, simultaneously with the main fact in issue, the jury must judge of the weight, consistency and sincerity of such declarations, as they do with reference to any other competent evidence adduced in the cause. We can, therefore, see no error in the admission of the evidence concerning appellee's declarations.

The certificate of the notary to the deposition of James L. Rat-

cliff was defective, but no exception on that account was filed by appellant until after the expiration of the first term of the court, subsequent to the filing of the deposition; and the court, therefore, erred in sustaining the exception to the certificate. Civ. Code (1876), § 587, subsec. 1. After the exception was sustained the appellee, without an order of the court, caused the clerk to send the deposition by mail to the notary, who amended the defective certificate and remailed it to the clerk, and the latter received and filed it.

It is insisted that it was necessary to obtain an order of court, authorizing it to be done, before the certificate could be amended. But we are of a different opinion. Civil Code (1876), § 588, provides that "if the examining officer's certificate be defective, whether exceptions have been sustained or filed or not," the party for whom the deposition was taken may require the clerk to deliver the deposition or mail it, under seal, to the examining officer, and the only condition precedent to the exercise of this right by the party is the tender to the clerk of money enough to pay postage. The clerk is required to indorse upon the deposition the time of mailing it, and the examining officer the time and manner of its reception, and, if he can truthfully do so, amend his certificate and return the deposition to the clerk, who shall indorse on the deposition the time and mode of its reception. Civ. Code (1876), § 583.

These provisions are intended to avoid the delays which resulted, under the Code of 1854, from omissions to file exceptions, because of insufficient notice or defectively certified depositions, until the case was called for trial. It so often occurred under that code that a deposition, after it had been filed and lain in court for several years, free to the inspection of all parties, was suppressed on an exception to it for defects in the form of the notice, caption or certificate, and that unnecessary delays, inconsistent with justice, were thereby wrought. In order to break down such practices and cure this defect in our civil procedure, it is provided in the present code that no exception, other than to the competency of the witness or to the relevancy or competency of the testimony, shall be regarded, unless it be filed and noted both before the commencement of the trial and before or during the first term of the court after the filing of the deposition.

Hence the exception to the deposition in this case, on the ground that the certificate was defective, ought to have been overruled in the first place, because it was filed too late; and although the exception was sustained, no order of court was necessary to render the amendment of the certificate legal, as Civ. Code (1876), § 588, authorizes amendments to defective certificates, in the manner therein prescribed either before or after exceptions, or at any time after the deposition has been filed, whether court be in session or not. We conceive that this is the only construction of this section of the code which would give full effect to the intention of the law-making power.

Wherefore the judgment is *affirmed.*

*Ireland & Hampton, for appellant.*

Geo. N. Brown, for appellee.

[Cited, *McLeod v. Ginther's Admr.,* 80 Ky. 399, 4 Ky. L. 276; *Chesapeake & O. R. Co. v. Reeves' Admr.,* 11 Ky. L. 14, 11 S. W. 464; *Louisville & N. R. Co. v. Molloy's Admr.,* 122 Ky. 219, 28 Ky. L. 1113, 91 S. W. 685.]