McLeod, receiver, v. Ginther's adm'r.

---

CASE 77—ORDINARY—OCTOBER 5, 1882.

## McLeod, receiver, v. Ginther's adm'r.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. The court adheres to the doctrine laid down in *Dills v. May, MS. Op., April* 25, 1882, that all declarations made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being a part of the *res gestæ* or a part of the thing done.

.2. The declarations of Fish, the engineer, were made at the time of the collision or a few moments afterwards, when there was no time to

contrive or devise a falsehood, and during the search for the victims of the accident. They are a part of the *res gestæ*, and competent as original evidence in the case.

3. The General Statutes, chapter 57, section 3, gives a cause of action to the widow of decedent for the willful neglect of the company, or its agents and employés, which resulted in his death, although he was an employé of the company.

4. It is not material whether declarations constituting a part of the *res gestæ* were uttered by one or the other of appellant's employés.

5. Even though Fish and decedent agreed in misconstruing the dispatch which seems to have caused the collision, yet, if the language and figures contained in it were such as to mislead, appellee had a cause of action.

6. The evidence was sufficient to maintain the action.

W. P. D. BUSH AND A. BARNETT FOR APPELLANT.

1. The declarations of Fish, "I had until 10:10, A. M., to make Beards," are not admissible or competent as a part of the *res gestæ*.

2. It was not made at the time the collision took place.

3. The statement was not made at the same time the instructions were given.

4. The statement was made by Fish as the agent or servant of the receiver.

5. As between Fish and Ginther and appellant, Fish was the agent of Ginther, and not the agent of the defendant, the receiver.

6. As to this matter they were equals, and bound for proper skill in understanding orders given in the usual way. (17 N. Y., 131; 1 Greenleaf on Evidence, sec. 13; 4 Wend., 396; 2 Hill, 445; Story on Agency, secs. 135-'6; 10 Ves., 128; 4 Kerr, 271; 9 Gray, 243; 57 Pa., 339; 20 Wall., 528.; 26 Grattan, 350; 36 Am. R., 825; 15 W. Va., 628.)

7. The statements or declarations of one co-equal fellow-servant of a railroad company are not competent as original evidence on behalf of his co-equal fellow-servant in the same service on the same train. (L. & N. R. R. Co. v. Collins, 2 Duv., 114; *Ibid* v. Cavans, 9 Bush, 559; Thompson on Negligence, secs. 26, 27, 38; Sherman & Redfield on Neg., secs. 86, 100, 105, 108, 109, 110; Story on Agency, secs. 183, 210, 217.)

8. The evidence did not sustain the verdict. (10 Bush, 667; 2 Duv., 577; 9 Bush, 522.)

W. LINDSAY, I. H. TRABUE, AND S. F. J. TRABUE FOR APPELLEE.

1. The exclamation of Fish was certainly made within ten seconds after the collision. Both were substantially simultaneous.

2. The declarations of a person at or immediately following an act in which he participates are admissible as substantive evidence, and

McLeod, receiver, v. Ginther's adm'r.

are in the nature of verbal facts.  (3 A. K. Mar., 395 ; 2 J. J. Mar.,. 384 ; Billings v. Sherley, 8 Bush, 154 ; .Mockabee v. Commonwealth, ·78 Ky., 380 ; 3 Cush. (Mass.), 181 ; 8 Wall., 397 ; 55 Penn., 402 ; Greenleaf, sec. 169 ; 11 Bush, 105 ; 13 Barb., 246 ; 5 Y. R., 512 ; 8 Watts, 355 ; 1 Key's N. Y., 390 ; 4 Caldwell, 161 ; 18 Gratt., 943 ; 32 *Ib.*, 672.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT :

The petition for rehearing demonstrates that some of the: principles of law laid down in the opinion were erroneously and unnecessarily applied to the facts of this case.

For the purpose of eliminating the *dictum* of the former opinion, which is withdrawn, and of answering new views. presented by the well prepared petition for rehearing, it becomes necessary to restate the facts and law of this case,. which we will do by using the language of the former opinion, so far as adhered to, and making such observations as the position now taken by counsel may require.

This was an action to recover damages for the willful neglect of the appellant's servants in sending dispatches to two conductors of trains which were to run on the same day, over the same part of its road.

The appellant denied any fault on the part of its servants in sending or wording the dispatches, and pleaded contributory negligence of the appellee's husband.

The jury, under proper instructions, found a verdict for the sum of $7,500 in favor of the appellee, and the appellant took an appeal, on which we are asked to reverse the judgment rendered in accordance with the verdict.

The dispatches were alike, and read this way:

"No. 103, I. E. R., N. Y., 4..13 :

"Fish extra east; can have until ten, 10, o'clock, A. M.. to make Beards for Number 2 and Number 4."

Fish, construing the dispatch to mean that he had until ten minutes after ten o'clock to reach Beards' Station, started east on an engine, with no train attached, and when in about one mile of that place, at seven minutes after ten o'clock, met and collided with train Number 2, going west, each running at the forbidden rate of near forty miles an hour, and the appellee's husband, John Ginther, and two other persons, were killed.

Fish was conductor and Ginther engineer on the engine going east.

The appellee introduced as a witness Waters, the engineer on the west bound train at the time of the collision, who testified, as shown by the following questions and answers taken from the stenographer's report of the evidence:

Questioned by plaintiff's counsel:

"Q. Who was the conductor on the train Ginther was on?

"A. Mr. Fish.

"Q. Did you see him?

"A. Yes, sir.

"Q. How long after the collision?

"A. He was the first man I met.

"Q. How soon was that?

"A. Well, when I gathered myself together I was on the right hand side coming this way, and I saw the engines were pushing out to the left, and I went out behind the train to look for my fireman, when Mr. Fish he said—

"Counsel for the defendant objects to the witness stating what Mr. Fish said. Objection overruled, to which ruling of the court the defendant excepts.

"Q. What did you say to Fish and what did Fish say to you concerning the collision?

"A. Well, he was the first man I met. He came up to me and commenced pulling out his watch, and says, 'What time have you got?' . I says, 'I have no time to compare time now; there is my conductor.' He says, 'I had until 10:10 to make Beards.' I says, 'No, you had not.' He went on to my conductor, and that is all that passed between us at that time."

The appellant insists that the statement of Fish that "I had until 10:10 to make Beards" was incompetent, because not a part of the *res gestæ*.

What constitutes *res gestæ* is often difficult to determine, as the relationship of facts, when the thing done is composed of different agencies and actions, separated more or less in point of time and manner of performance, is not always palpable, and though necessary, may frequently be obscured by the multiplicity of particles which go to make up the main fact under consideration. (1st Greenleaf, section 108.) Hence the particular facts of each case must determine the relevancy of declarations sought to be proven as part of the act or facts constituting and legally belonging to the cause of action.

We have been cited, and still adhere to, the rule on the subject laid down in the case of Dills v. May, in which it is said : "The general rule is that all declarations made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being what is termed a part of the *res gestæ;* in other words, a part of the thing done.'

Two things unite to constitute the cause of action in this case. First, the injury to appellee's husband; second, the acts which began with the sending of the several dispatches, resulted in their misconstruction, and ended with the accident and its attendant circumstances.

Anything that was said during the time these facts took place, which was so connected with them as to illustrate their true character, belongs to the *res gestæ*, and may be proven as original evidence. In the case of Hanover Railroad Co. v. Coyle, 55 Penn. St., p. 402, where a peddler's wagon was struck and the peddler injured, by the negligence of the engineer, the latter's declaration, made after the infliction of the injury, was admitted as a part of the transaction itself, the court saying:

"We cannot say that the declaration of the engineer was no part of the *res gestæ*. It was made at the time—in view of the goods strewn along the road by the breaking up of the boxes—and seems to have grown *directly out of* and *immediately after* the happening of the fact."

This case is in point, and it is supported by high authority.

Lord Chief Justice Holt, in an action for assault and battery of the wife, in the case of Thompson and wife v. Trevanion, Skinner, 402, permitted "what the wife *said* immediately upon the hurt received, and before that she had time to contrive or devise anything for her own advantage, to be given in evidence." Also see Aveson v. Kincaid, 6th East; King v. Foster, 6th Carrington and Payne; Commonwealth v. Pike, 3 Cushing; Rawson v. Haigh, 2 Bingham; Beaver v. Taylor, 1st Wallace; Insurance Company v. Mosley, 8th Wallace.

Mr. Starkie says: "If the declaration has no tendency to illustrate the question, except as a mere abstract statement

detached from any particular fact in dispute, and depending for its effect entirely on the credit of the person making the declaration, it is not admissible. But if any importance can be attached to it as a circumstance deriving a degree of credit from its connection with the circumstances of the case, independently of any credit to be attached to the speaker or writer, then the declaration is admissible."

It was important to show what Fish and Ginther thought of the meaning of the dispatch while they were acting under it, as the negligence in this case consists of the wording of the dispatch so as to mislead them, they being bound, by the rules of the company, to understand it alike before acting under it.

The declarations of Fish were made within a few seconds after the casualty, in view of the wrecked train, and amidst the search for persons whose fate was then unknown, and while Ginther, who lived but thirty minutes, was dying from the injuries he had received.

He had no time to contrive or devise a falsehood by which to exonerate himself from blame, and his declaration was so connected with the circumstances then surrounding him, and which form a part of this case, as to give it importance in determining the fact that he and his engineer had run the engine in the honest belief that they had until ten minutes after ten o'clock to reach Beard's Station.

The declaration related alone to the declarant's state of mind when he received the dispatch, and the continuance of that state of mind while he was acting under it, and it was made before the expiration of the fatal ten minutes in question, and prior to any knowledge on his part that he, and not the agents on the west-bound train, had misconstrued the dispatch, the first information of that kind being com-

municated by Waters' response, ''No, you had not,'' to his declaration. Therefore, if we ignore the credit to which Fish may have been entitled as a truthful man, his declaration, made under the circumstances, impresses the mind with confidence in its truth, and is entitled to be given its weight as any other fact going to make up the whole transaction.

The fact that Fish and Ginther acted under the dispatch as giving them ten minutes after ten o'clock to reach Beard's, shows that they put that construction on it, and increases confidence in Fish's declaration, which was a part of the *res gestæ*, and therefore admissible evidence.

It is contended that Fish and Ginther were co-equal fellow-servants, and for that reason their declarations were inadmissible for each other, and the company not bound for the negligence of one that resulted in injury to the other.

This position is not correct, because section 3 of chapter 57, General Statutes, as shown by the petition for rehearing, gives a cause of action to the widow of Ginther for the willful neglect of the company, or its agents and employés, which resulted in his death, although he was an employé of the company.

And we do not see that it makes any difference whether declarations constituting a part of the *res gestæ* were uttered by one or the other of these employés, as, when made as a part of the thing done, they cease to be mere hearsay, and are invested with the characteristics of a fact, hence become an appreciable element of the main fact under consideration. The appellee had the right to recover for the death of her husband, even if Fish and Ginther did agree in the wrong construction of the dispatch if the language and figures of the dispatch were such as to mislead them, notwithstand-

McLeod, receiver, v. Ginther's adm'r.

ing they used ordinary care in deciphering and reading it,. and to amount, in connection with all the facts of the case,. to willful neglect on the part of the company and its agents.

It is now urged that the evidence was insufficient to author-ize the verdict, and that the court below ought to have in-structed the jury to find as in case of non-suit.

It is admitted that the jury were properly instructed; therefore, unless their verdict is palpably against the weight of the evidence, this court cannot disturb it.

It must be concluded from the evidence that Fish and Ginther misconstrued the dispatch, and the train dispatcher intended to inform each conductor that the trains had only until ten o'clock to make Beard's, and the question of willful negligence turns upon the manner of wording the dispatch,. the rules regulating the mode of dispatching, and the exces-sive rate of speed at which the trains were being run.

It is proven that, under the rules of the company, time may be repeated in a dispatch as a precaution against mis-apprehension, and that figures may be used in the repeti-tion.

Whether Fish and Ginther were schooled in the rules so as to enable them to avoid such a mistake as they so unfor-tunately fell into, does not appear. The rules change the ordinary meaning of the language and figures which were used in the dispatch, and substitute for them an artificial signification likely to be productive of misunderstanding amongst the employés. The adoption of such rules showed a want of care by the company for the lives of those in its employment who were required to act under them.

The rules do not authorize the word "ten" to be followed by the figures "10" without brackets, as was done by the

train dispatcher, and which was certainly the immediate cause of the disaster.

Had brackets been used, or the words spelled in full, and no figures used, a misconstruction could hardly have been made; and it was proven that the trains were run at a greater rate of speed than authorized by the rules of the company. Whether this in fact contributed to the disaster, it at least showed a want of care by the conductors in charge of the trains, amounting to gross negligence, and goes to make up the dereliction of duty charged upon the company. When it is considered that the train dispatcher, although he intended otherwise, so wrote the dispatch as to mislead Fish and Ginther, it cannot be soundly argued that his act did not amount to willful neglect, because he did not intend to mislead them, for he willfully worded the dispatch; he knowingly used language and figures without any brackets, calculated to result in misleading, and his act did mislead Fish and Ginther, and we are therefore of the opinion that his intentional omission of such precautionary signs or words in the dispatch as any person of ordinary prudence would have used, whether contrary to or in pursuance of the rules, amounted to willful neglect, for which the company is responsible, unless the deceased, knowing the rules and understanding the dispatch, willfully undertook the journey.

The evidence fails to show that he was guilty of such suicidal recklessness, or that the proximate cause of his death consisted in anything else than the negligently worded dispatch.

Wherefore the judgment is affirmed.