## National Life & Accident Insurance Company v. Hedges

(Decided March 28, 1930.)

L. B. ALEXANDER for appellant.

J. B. ALLENSWORTH for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Transylvania Casualty Insurance Company issued an accident policy to Alonzo Hedges, by which it

agreed, in the event of the death of insured from accidental means to pay $5,000 to the beneficiary. The mother of Hedges was originally designated as beneficiary, but later his sister, Lena Hedges, was substituted for the mother. If the premiums were paid in advance, an annual addition of 10 per cent of the principal sum was made until such additions amounted to 50 per cent. of the initial principal sum. The National Life & Accident Insurance Company reinsured the risk, and collected the premiums for several years. Lena Hedges sued the National Life and Accident Insurance Company to recover $7,500 upon the policy, alleging that the insured accidentally fell against the sharp corner of a table in his room and sustained injuries from which he died within a few hours. The jury on the first trial failed to find a verdict, but at the second trial a verdict was returned and a judgment rendered in favor of the plaintiff for $7,500, being the full amount of the policy, with the 10 per cent. addition for five years. The insurance company appeals. Numerous grounds for reversal are urged, which will be considered in the course of the opinion.

It is first insisted that incompetent testimony was permitted to go to the jury. In order to understand the argument advanced by appellant, it is necessary to state the facts. There was testimony tending to show that Hedges was a strong man regularly employed in his trade as a plasterer. He had lived for some time at a hotel in Louisville, and, on the morning of January 11, 1928, entered the dining room for breakfast and then returned to his room on the third floor. In about ten or fifteen minutes from the time he left the dining room he returned to the clerk's desk in a cramped or stooped position, holding his hand over his left side, apparently in great agony, and stated that he had tripped and fallen against the corner of a small table in his room. He made further explanations which the court did not allow the jury to hear. Appellant argues that the statements of the witnesses describing the condition of Hedges, and his own declaration as to the cause, were not competent testimony. It was proven that there was in the room of Hedges a small table about two feet square with sharp corners. The obvious suffering of Hedges could not be accounted for except by his statement respecting the accident. The pain continued during the day with increasing violence until evening when death ensued. A lady applied

liniments and hot compresses to his side and observed a red spot between his hip and lower rib. The competency of declarations of an injured person has been the subject of much consideration by the courts. In Fidelity & Casualty Co. v. Cooper, 137 Ky. 544, 126 S. W. 111, 114, a similar question was presented. Cooper was a passenger train conductor in good health. He fell into a turn-table pit sustaining some cuts and bruises to his chin, hands, and chest. He continued to suffer, but made a one way run the next day, being unable to make the return trip. The pains in his chest increased, and within a few days he died of pneumonia. A bruised spot appeared on his breast below the right nipple. He made a statement to the first person he met after he climbed out of the pit, the exact time not being shown. In response to a complaint concerning the competency of that testimony the court said: "The court properly admitted in evidence the statements of Cooper made to the first person who reached him just after he climbed out of the pit. His face and his hands were bleeding, and his statement then, as to how he had received the injuries a few seconds after the accident occurred, was properly admitted as part of the res gestæ. Precisely this question was before the United States Supreme Court in Travelers' Insurance Co. v. Mosley, 8 Wall. 408, 19 L. Ed. 437. There the insured went downstairs, and when he came back was suffering and said that he had fallen down the stairs. The evidence was held competent. The ruling in this case has been followed by us in several cases. Petrie v. Cartwright, 114 Ky. 103, 70 S. W. 297, 24 Ky. Law Rep. 903, 59 L. R. A. 720, 102 Am. St. Rep. 274; L. & N. R. R. Co. v. Molloy, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; I. C. R. R. Co. v. Houchins, 125 Ky. 483, 101 S. W. 924, 31 Ky. Law Rep. 93, and cases cited."

In the case decided by the Supreme Court of the United States, cited by the court (Travelers' Insurance Co. v. Mosley, 8 Wall. 408, 19 L. Ed. 437), the conditions were just the reverse of those here appearing, as the insured had descended the stairs and upon returning to his room stated that he had fallen. In Travelers' Protective Association v. West (C. C. A.) 102 F. 226, the injured man came from the basement of a drug store and stated that he had bumped his head on a protruding gas pipe. In the case of Omberg v. U. S. Mutual Association, 101 Ky. 303, 40 S. W. 909, 911, 19 Ky. Law Rep. 462, 72 Am.

St. Rep. 413, this court quoted from Mr. Bliss in his work on Life Insurance (2d Ed.) p 633: " 'In a case where the action was brought on an accident policy, the supreme court (evidently referring to the Dabbert case [13 Ohio Dec. 792] pased upon the question of the admissibility of the declarations of the insured as to the injuires he had suffered and the mode in which they were incurred. They held that the declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints, expressions, and exclamations as furnished evidence of a present, existing pain or malady, to prove his condition, ills, pains, and symptoms, whether arising from injury by accident or violence. If made to a medical attendant, they are of more weight than if made to another person. So is a declaration, made by a deceased person contemporaneously, or nearly so, with a main event by whose consequence it is alleged that he died, as to the cause of that event. The views adopted in the cases cited from Ohio and Kansas seem most in accordance with correct principles.' "

It will be observed in the opinion in that case that the court indicated a disinclination to extend the doctrine in so far as narrative declarations were concerned further than to admit them when made to a physician by whom the patient was being treated. The res gestæ rule is closely related, but distinct from that respecting subsequent statements, and has for its sanction the spontaneous impulse of the injured person, when the declaration follows so soon after an injury that no time or motive for the fabrication of a story could be presumed. In Louisville R. Co. v. Johnson, 131 Ky. 277, 115 S. W. 207, 208, 20 L. R. A. (N. S.) 133, the court said: "No hard and fast rule can be laid down as to the admissibility of evidence as a part of the res gestæ. The facts and circumstances . . . are different, and the courts have come to the point of adjudging this question as it is presented by the particular case under consideration." In Cincinnati, N. O. & T. P. R. Co. v. Evans, 129 Ky. 152, 110 S. W. 844, 846, 33 Ky. Law Rep. 596, it appeared that a declaration had been made by the engineer, who was concerned in causing the injury, in about a minute thereafter. It was made in response to information that he had killed a brakemen, and was to the effect: "That is the way whenever I get mad. I either hurt or kill somebody." The court said: "In McLeod v. Ginther, 80 Ky. 399, 4 Ky. Law Rep. 276, there was a collision between

two passenger trains. To the first man who met him the conductor of one of the trains said: 'I had until 10:10 to make Beards.' The evidence was held competent. In L. & N. R. R. Co. v. Shaw, 53 S. W. 1048, 21 Ky. Law Rep. 1041, Shaw had fallen from a passenger train. A man near by heard his cries, and went to him. What he then said to this man, the first person to reach him while the departing train was still in sight, was held admissible as res gestæ. In Brown v. Louisville R. R. Co., 53 S. W. 1041, 21 Ky. Law Rep. 995, the declarations of the plaintiff at the place where she fell were admitted, but her declarations while passing down the street on her way home were rejected. In Floyd v. Paducah R. R. Co., 64 S. W. 653, 23 Ky. Law Rep. 1077, the declarations of the mortorman at the place of the collision just after the accident were admitted. In L. & N. R. R. Co. v. Molloy, 91 S. W. 685, 28 Ky. Law Rep. 1113, 122 Ky. 219, a passenger train struck a vehicle at a public crossing. What the driver of the vehicle said to the first man who got to him and who ran to him as soon as he could was allowed as res gestæ. In Rex v. Foster, 6 C. P. 325, a statement made by the deceased as to the cause of the accident as soon as he was picked up after he had been run over was admitted as res gestæ. In Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437, the deceased went downstairs, and, when he returned to his room, complained of his head hurting him, and said that he had fallen down the steps. The evidence was admitted as part of the res gestæ. We do not see how this case can be distinguished from those cited. The statement of the engineer was in effect a declaration that he was mad, and that the jerk of the train which threw Evans off was due to this fact. It was not a bare expression of opinion, for the engineer was in charge of the engine, and the engine had given the jerk which threw Evans off. The thing that he was explaining was how he came to give the train such a jerk. It is earnestly insisted that the evidence is wholly incredible, but the credibility of the witnesses is for the jury. If the evidence was competent, it was properly admitted.''

In Louisville & N. R. Co. v. Miller, 154 Ky. 236, 157 S. W. 8, the testimony of two witnesses, to the effect that two or three minutes after the injury the injured man was doubled up on the ground, groaning, and making outcries, was held to be competent. Cincinnati, N. O. & T. P. R. Co. v. Martin, 146 Ky. 260, 142 S. W. 410;

Illinois C. R. R. Co. v. Houchins, 125 Ky. 483, 101 S. W. 924, 31 Ky. Law Rep. 93; Louisville & N. R. Co. v. Foley, 94 Ky. 221, 21 S. W. 866, 15 Ky. Law Rep. 17. In Roberts v. Louisville Ry. Co., 168 Ky. 230, 181 S. W. 1131, 1132, spontaneous declarations of the injured man made at the time and place of the injury and within a minute thereafter were held competent. The court said: "The general rule is that all declarations made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are a part of the things done, and are admissible as original evidence, whether made by the party in interest or some one else. The declaration of an injured party, under such circumstances, is admissible upon the theory that in point of time they are so nearly contemporaneous with the main fact that there has been no time in which to concoct falsehood and fraud and self-serving declarations, and that such declaration is undesigned. McLeod v. Ginther, 80 Ky. 403; Dills v. May, 3 Ky. Law Rep. 765; Sherley v. Billings, 8 Bush, 147, 8 Am. Rep. 451; L. & N. R. R. Co. v. Molloy, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; I. C. R. Co. v. Houchins, 125 Ky. 483, 101 S. W. 924, 31 Ky. Law Rep. 93; L. & N. R. R. Co. v. Messer, 164 Ky. 218, 175 S. W. 360; Petrie v. Cartwright, 114 Ky. 103, 70 S. W. 297, 24 Ky. Law Rep. 903, 59 L. R. A. 720, 102 Am. St. Rep. 274; Fidelity & Casualty Co. v. Cooper, 137 Ky. 544, 126 S. W. 111; C., N. O. & T. P. Ry. Co. v. Evans, 129 Ky. 152, 110 S. W. 844, 33 Ky. Law Rep. 596; L. & N. R. R. Co. v. Strange's Adm'x, 156 Ky. 439, 161 S. W. 239; L. & N. R. R. Co. v. Shaw's Adm'r, 53 S. W. 1048, 21 Ky. Law Rep. 1041; L. & N. R. R. Co. v. Earl's Adm'r, 94 Ky. 368, 22 S. W. 607, 15 Ky. Law Rep. 184; Brown v. Louisville Ry. Co., 53 S. W. 1041, 21 Ky. Law Rep. 995." Cf. Ratcliffe v. Com., 231 Ky. 337-343, 21 S. W. (2d) 441. See also, Peiree v. Van Dusen (C. C. A.) 78 F. 693, 69 L. R. A. 705; Bernard v. Grand Rapids Paper Box Co., 170 Mich. 238, 136 N. W. 374, 42 L. R. A. (N. S.) 930; Frink v. Coe, 4 G. Greene (Iowa) 61 Am. Dec. 141; Lewis' Adm'r v. Bowling Green Gaslight Co., 135 Ky. 611, 117 S. W. 278, 22 L. R. A. (N. S.) 1169; Barrett's Adm'r v. Brand, 179 Ky. 746, 201 S. W. 331; 22 C. J. pp. 443-470; People v. Vernon, 35 Cal. 49, 95 Am. Dec. 49.

In Starr v. Ætna Life Insurance Co., 41 Wash. 199, 83 P. 113, 116, 4 L. R. A. (N. S.) 636, the statements were made after an hour had elapsed, but the court held them

admissible as part of the res gestæ, saying: ''In this case, considering the facts that the man's associates had left him, that he was so mangled and crushed that an amputation of his arms was necessary, and that he died within 36 hours of the accident, it would be a violent presumption to indulge that the statement was made for a self-serving purpose; and we think that the refusal of testimony under such circumstances would tend to work an injustice by excluding testimony which would have a tendency to throw light on a transaction which would otherwise be obscure for want of evidence.''

The principle deducible from the authorities is that statements of the injured party, accompanying the transaction, and made under such circumstances as will raise a reasonable presumption that the declarations are the spontaneous utterances of thoughts springing out of the transaction itself and made so soon thereafter as to exclude the presumption of design, constitute competent testimony. Spontaneity, as distinguished from a mere matter of time, has come to be considered the determining factor. 22 C. J. p. 464, sec. 549. The action of the trial court in admitting the statements of Hedges made to the first person seen by him after the accident, within a few minutes thereof, and while he was laboring under the stress of the misfortune, was in accord with the settled rule. Other declarations during the day, after Hedges had had time to gain control of himself and an opportunity to premeditate, were not admitted.

It is also insisted that the court erred in excluding testimony offered by the appellant. The complaints are numerous, and no good purpose would be served by reciting them. We have carefully considered all the criticisms made in appellant's briefs, as well as the avowals in the record not specifically mentioned, and find no merit in any of the complaints. The trial court confined the evidence strictly within the limits defined by familiar rules, and no error in that particular was committed.

It is urged that the court should have sustained appellant's motion for a peremptory instruction in so far as the annual additions to the policy were concerned. At the first trial of the case the court had directed the jury to find for the defendant respecting the $2,500 claim for annual additions to the policy. It is argued that the question thus became res judicata, and the court was not at liberty thereafter to submit the question to the jury or to permit a recovery thereof. It is argued at length that the court, having so instructed the jury, had

acted upon and foreclosed that question. 34 Cyc. 1666; 33 C. J. p. 1047; Louisville Gas Co. v. Kentucky Heating Co., 142 Ky. 254, 134 S. W. 205; Wood v. Sharp, 159 Ky. 47, 166 S. W. 787; Stone v. Winn, 165 Ky. 22, 176 S. W. 933. The principle is correctly stated, but there was no judgment of the court upon the question presented. The court did instruct the jury to find a verdict for the defendant upon the claim for $2,500 additions to the policy, but no verdict was returned respecting it, or judgment entered thereon. In the absence of a verdict and judgment upon that claim, the case was left precisely as if no trial had been had. The instruction to the jury was not made effective or final. A judgment to be effective must be entered upon the order book and signed by the presiding judge. Farris v. Matthews, 149 Ky. 455, 149 S. W. 896; Muncy v. Gibson, 169 Ky. 153, 183 S. W. 464.

Another insistence of the appellant is that the court erred in refusing to give certain instructions offered by it. The contention is based upon the theory, first, that the claim for the $2,500 annual additions to the policy was adjudicated on the first trial, and, second, that there was no evidence that the premiums had been paid in advance, which was an essential condition of the right to the additions. What has been said disposes of the first contention, and, as to the other, the evidence leaves no room to doubt that the premiums were paid in advance. It is true that a local agent had advanced the premiums for the beneficiary and had not been reimbursed for the final one, but that was a matter between the agent and the beneficiary, and did not affect the insurance company, which had received the annual premiums in advance.

The policy contained a provision to the effect that, "in the event of injury, fatal or non-fatal, of which there should be no external or visible marks on the body," the policy should be void. The appellant, in its answer, relied upon the provision and pleaded that no external or visible marks were present upon the body of Hedges. Conceding that there was a scintilla of evidence to carry the case to the jury upon that question, and that a finding on such evidence may not be disturbed, unless flagrantly against the evidence, it is nevertheless contended that the verdict in this case upon that issue was palpably against the evidence. There was positive testimony that an external mark of injury was visible on the body of

Hedges, and the issue was submitted to the jury by an apt instruction. There was evidence of a negative character, to the effect that no signs of injury were found upon the body by the coroner, the embalmer, or others who had opportunity to discover them. An issue of fact was presented, and the jury had the right to accept the testimony on the one side and reject that on the other side. A verdict in cases of that character is not contrary to the evidence. It depends upon the credit given by the jury to the respective witnesses. Powell v. Galloway, 229 Ky. 37, 16 S. W. (2d) 489; Lincoln Coal Co. v. Deaton, 229 Ky. 330, 17 S. W. (2d) 249; Louisville & N. R. Co. v. Rowland, 227 Ky. 841, 14 S. W. (2d) 174.

Criticism is made of instructions Nos. 1 and 2, which are as follows:

"1. If you shall believe from the evidence in this case that the deceased, Alonzo Hedges, sustained bodily injuries, the effect of which resulted in the loss of his life, and shall further believe from the evidence that such injuries, if any, were caused directly, independently and exclusively of all other causes by external, violent or accidental means, then the law is for the plaintiff and you will so find, but unless you shall so believe from the evidence, then the law is for the defendant and you will so find.

"2. If you find for the plaintiff, you will find for her not exceeding the sum of $7,500.00 the amount claimed in the petition."

It is said the instructions failed to require the jury to find from the evidence that the accident produced upon the body of Hedges external and visible marks of injury which the policy made a condition of liability under it. The court gave other instructions, however, and they must be read as a whole. At the instance of appellant the jury was told that it could not find for plaintiff under instruction No. 1, "unless you shall believe from the evidence that there was external and visible marks of said injury, if any, upon the body of said Alonzo Hedges." The objection to the second instruction was based upon the theory that the liability should be limited to $5,000, because the additions to the policy had been eliminated on the first trial. We have seen already that such contention is not sound. The third instruction also is criticized. It presents only theories of the defense, and we are unable to discern any reason why appellant

shculd object to it. Other instructions were given, and, taken together, the whole fairly submitted the issues presented.

It is also argued that the notice of the injury and the proof of loss were inadequate, but there is no merit in these claims. The criticism of the notice is that the letter which was registered to the company within ten days after the accident, as required by the policy, simply notified the company of the death of the insured, and did not state the facts showing that the death resulted from an accident. The terms of the policy did not require any particular form of notice, or any particular facts to be stated therein. It required simply that a "written notice of any injury, illness or death for which claim is to be made must be given to the company at its home office within ten days from the date of the accident, beginning of illness or death." There was a further provision to the effect that, if the notice could not be reasonably given within ten days, it should be given as soon as possible. The written notice of the death of insured was sufficient, since the contract did not require the notice to state the cause or manner of the death. The fact of death was all that was required to be stated in the written notice. The proof of loss was made upon forms furnished by the insurance company. They were the usual forms to be used for application for sick benefits, but seemed not inappropriate for a death claim. Instead of requiring other or more formal proofs, the company denied liability. Under the facts adduced, if there was any failure to comply literally with the terms of the policy, it was waived. Pacific Mutual Life Ins. Co. v. Cash, 224 Ky. 292, 6 S. W. (2d) 239; Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Fidelity & Casualty Co. v. Cooper, 137 Ky. 548, 126 S. W. 111.

Finally, it is argued that the verdict of the jury was palpably against the evidence on the main question of accidental death. It is said that Hedges died from a disease, and not from an accidental injury. There was expert testimony to the effect that a blow such as Hedges received in a fall against the corner of a table was sufficient to cause his death. Back of this was the undoubted and undenied fact that the man was hurt in the morning, suffered severe and unceasing pain for a few hours, and died. The proof is very meager that Hedges had any disease, but the jury had all the facts and circumstances before it. It was for that tribunal to determine whether

the death of Hedges resulted from the injury, or from some other cause, and its verdict to the effect that it was the consequence of an accident is not contrary to the evidence. Pacific Mutual Life Ins. Co. v. Cash, supra.

Other questions incidentally discussed in the briefs have been considered, but found to be without sufficient significance to require discussion.

The judgment is affirmed.