## Friedman Co., Inc., v. Friedman.

(Decided Feb. 18, 1938.)

206

ROBERT L. PAGE for appellant.

LOUIS BROWNSTEIN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellant has prosecuted this appeal from a judgment of the Jefferson circuit court affirming an award of the Workmen's Compensation Board in favor of appellee as a dependent of her deceased husband, Benjamin Friedman, who was the president of the appellant, Friedman Company, Incorporated.

It is claimed that on April 1, 1936, while in the course of his employment on the premises of the company, deceased sustained an injury by accident resulting in his death on April 20th, 1936.

A reversal of the judgment is asked upon the sole ground that there is no evidence of a substantive and probative nature tending to support the award of the Compensation Board.

Norbert Friedman, a son and business partner of the deceased, testified that he was not present at the store at the time the deceased received his injury, but that he came to the store about 2 hours after that time and his father told him that he had walked to the back of the store, back towards the stock room in going to the washroom, and there were some planks sticking out in the middle of the floor and he stumbled over them and hit his side against a waste paper crate, and that he examined his father's side and found a wound or bruise on it. He advised his father to go to the doctor. He called Dr. Diamond and the doctor treated him practically every day from then on until the time of his death. He said that, before April 1st, his father was able to attend to his business regularly and lost no unusual time from the business; that after April 1st, he did but little, if any, work. He said he called for his father on the

next morning and the colored girl answered the call and said that his father could not get up, but later in the day he came to the store but did not stay long, and that he was not well any more and grew worse until his death. He was asked on cross-examination if he knew where the crate was that his father claimed that he fell against, and he said that it was to the right of the door "right in the entrance."

The statements of the deceased made to the witness concerning his accident were not competent, it being too remote to constitute a part of the res gestæ. Nor were the statements of the colored girl competent. But the witness' observations of the injury or wound inflicted upon deceased and his physical condition, before and after April 1st, were competent.

Dr. Diamond testified that he was called to the home of deceased on the night of April 1st, and found that he had a lacerated area over the lower left rib and also that he was complaining of considerable pain over the left lower ribs and he found bruises and contusions over the left ribs from the right lower on down; that he strapped his chest up with adhesive tape and gave him narcotics to relieve his chest pain; that deceased came to his office for treatment for a few days and then suddenly became very ill at his home and then he diagnosed his case as heart trouble. He then called Dr. Weiss, a heart specialist. The doctor was asked what was the primary cause of Mr. Friedman's death and he said it was caused from coronary thrombosis. He was then asked what caused that coronary thrombosis, and, after giving the history of the case and the events and circumstances, he concluded that deceased's death was due to the injury.

Dr. Weiss also testified that in his medical opinion deceased's death was the direct and proximate result of the injury.

There is no escape from the conclusion that the testimony of the doctors constitutes evidence of some probative value and is sufficient to sustain the finding of the board that deceased's death resulted from an injury. The next question to be considered is whether or not deceased sustained an injury on or about the premises where he was employed and in the course of his employment.

Betty Hastings, who was an employee of the store, testified to conversations with the deceased and her observations of him before and after April 1st. She said that she never heard deceased complain of pains before the alleged time of his accident but thereafter he complained and when he came to the store he did not stay long.

Nathan Weinberg, who was employed in the store of deceased, testified that he was in the store on April 1st, and the deceased stepped out of the store and, as he came back in, he, the witness, asked deceased "what was the matter" and he said he went down to pick up a board and hit himself on the corner of the crate. The witness did not state what he observed that prompted him to ask deceased "what was the matter," but in the circumstances it will be inferred that the witness observed something unusual or wrong in the appearance or conduct of the deceased, otherwise he would have had no occasion to ask him the question he did. It is shown that the deceased had been out of the store but a short time, and when he returned he told about the accident in response to the witness' question.

It is shown by the uncontradicted evidence of the doctors and other witnesses that there was a wound on deceased's side consisting of severe lacerations and bruises. These physical facts corroborate deceased in his statement that he received an injury to his side by falling against the paper crate as stated by him to the witness soon after he returned to the store and apparently before time for pretense or fabrication.

It is conceded by appellee that hearsay evidence will not support an award and that the evidence of the various witnesses relating to conversation had with deceased is incompetent, except the statements he made to the doctors in order to enable them to treat him; and further that the declarations made by the deceased to the witness Weinberg were a part of the res gestæ and competent to show that deceased received the injury at the place and in the manner stated by him to Weinberg.

In National Life & Accident Insurance Company v. Hedges, 233 Ky. 840, 27 S. W. (2d) 422, 425, it was claimed that Hedges' death resulted from a fall against the sharp corner of a table in his room at the hotel. It was shown by the plaintiff that on the morning of that

day Hedges returned to his room after breakfast and in about 10 or 15 minutes he returned to the clerk's desk in a cramped or stooped position, holding his hand over his left side, apparently in considerable pain, and stated that he had tripped and fallen against the corner of a small table in his room. The insurance company contended that the declaration made by Hedges to the hotel clerk was not competent, and that being the only proof tending to sustain the case, there was no proof that he sustained an injury. In holding that the testimony was admissible as a part of the res gestæ, the court said:

"The principle deducible from the authorities is that statements of the injured party, accompanying the transaction, and made under such circumstances as will raise a reasonable presumption that the declarations are the spontaneous utterances of thoughts springing out of the transaction itself and made so soon thereafter as to exclude the presumption of design, constitute competent testimony. Spontaneity, as distinguished from a mere matter of time, has come to be considered the determining factor. 22 C. J. p. 464, sec. 549. The action of the trial court in admitting the statements of Hedges made to the first person seen by him after the accident, within a few minutes thereof, and while he was laboring under the stress of the misfortune, was in accord with the settled rule."

Also, in the case of Provident Life & Accident Insurance Company v. Diehlman, 259 Ky. 320, 82 S. W. (2d) 350, Diehlman's daughter testified that she saw her father going down the basement steps to resume work there and shortly afterward he appeared at the head of the basement steps and she heard him coughing and went to the door and spoke to him as he came out. He was holding himself, crouched over, and said to her, "I am hurt; I fell." It is held in that case, which also refers with approval to the Hedges Case, supra, that Diehlman's statement to his daughter constituted a part of the res gestæ and was properly admitted. In that case, like the present one, no one saw Diehlman injured, nor knew anything about what produced his injury or how it occurred except the statement made by him, coupled with his appearance and conduct indicating that he was injured.

In the case of Travellers' Insurance Company of

Chicago v. Mosley, 8 Wall. 397, 19 L. Ed. 437, decided in 1869, it was held that the declarations of a party as to the cause of his injury, as that he had fallen downstairs, made immediately after the occurrence, are admissible as part of the res gestæ to show such cause.

Being unable to distinguish the present case from the three cases supra, we are compelled to the conclusion that the statements of the deceased to Weinberg was competent evidence and is sufficient to sustain the board's finding that deceased sustained an injury in the way and manner stated by him. And, as we have already observed, after eliminating all hearsay and other improper evidence appearing in the record, there remains sufficient evidence to sustain the finding of the board that the deceased's death was the direct and proximate result of the injury thus received by him.

Judgment affirmed.