## Louisville & Nashville Railroad Company v. Bell.

### Same v. Jones.

(Decided October 26, 1915.)

### Appeals from Bell Circuit Court.

1. Carriers—Duty to Protect Passengers From Insult and Indignity— Measure of Damages for Failure to do This.—A carrier of passengers is under a duty to protect its passengers from violence as well as from vulgarity, obscenity, indecency and annoyance on the part of another passenger, and if it fails to do this after being apprised of the conduct of the offending passenger, or after by the exercise of reasonable care it could have known of this ob-

noxious conduct, it will be liable in damages to the other passengers for the humiliation, mortification, annoyance, discomfort and mental pain suffered by them.

2. Carriers—Arrest or Ejection of Disorderly or Drunken Passengers.—Under sections 806 and 1342b of the Kentucky Statutes the servants of a carrier are armed with ample authority to eject or have arrested by some peace officer any person who is drunk or disorderly on a railroad train.

3. Carriers—Duty to Passengers—When Liability for Violence, Insult or Indignity Arises.—The liability of a carrier to its passengers for acts of violence, indecency, obscenity or disorder on the part of a fellow passenger does not attach until the conductor or other railway employes charged with the duty of looking after the safety, care and comfort of the passengers know, or have reasonable grounds to believe, that the obnoxious passenger will be guilty of the violent · or disorderly conduct complained of, or the appearance, manner or conduct of the offending passenger is calculated to put a reasonably prudent person on notice that he may be guilty of this character of conduct.

4. Carriers—Evidence of Disorderly Conduct of Passenger—When Admissible.—In a suit by a passenger to recover damages on account of the disorderly conduct of another passenger, evidence of the misconduct of the offending passenger before the attention of the trainmen is called to it, or in the exercise of reasonable care could have been discovered by them, is not admissible, but evidence of misconduct after the trainmen have been apprised of such misconduct, or by the exercise of reasonable care could have discovered it, is competent in aggravation of damages.

5. Damages—Assessment of.—A judgment for $500 against a carrier in favor of a female passenger in an action to recover damages for humiliation on account of the misconduct of another passenger is not excessive.

B. D. WARFIELD and C. W. METCALF for appellant.

JAMES M. GILBERT, CHARLES E. HERD and L. F. DeBUSK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming in each case.

The appellees, Pearl Bell and Helen A. Jones, colored women, brought separate suits against the appellant railroad company to recover damages on account of the misconduct of another colored woman in a coach in which these appellees were riding. The suits were heard and disposed of together in the lower court, and there was a judgment in favor of each of the appellees for $500.00.

For cause of action the appellees in their petitions charged, in substance, that while they were passengers

on a train of the appellant company a colored woman who was drunk and boisterous was permitted to get on the train at Middlesborough and go into the coach in which they were sitting. That during the time she was in this coach as a passenger she was continually drunk, using vulgar and indecent language, and acting in a very disorderly, obscene manner, all of which occurred in the presence of these appellees. That although the conductor in charge of the train came into the coach in which the appellees and this offensive colored woman were riding soon after the train left Middlesborough and not only saw that she was drunk and disorderly but had his attention called to her conduct by some of the passengers, he did not either put the woman off the train, take her out of the coach, or attempt to induce her to cease her offensive misconduct.

The answer was a traverse of the averments of the petition.

The evidence on behalf of appellees showed that Willie Curry, the disorderly woman, boarded the train at Middlesborough, the station at which the appellees took passage. That when she came in this car she was drunk and disorderly and using vulgar language, which disorderly conduct and use of obscene language continued until she left the train. Witnesses also described the manner in which this Curry woman acted and repeated the vulgar and obscene language used by her, which embraced almost every form of obscenity and indecency that a drunken, vile negro woman could be guilty of.

The appellee, Helen Jones, was asked and answered these questions: "Q. At the time that Mr. Worsham, the conductor of the train came in, what was Willie Curry doing and what was her condition? A. Sitting with her head throwed back and hat throwed off her head, cursing and going on when he was in there. Q. Cursing when Mr. Worsham was in there? A. Yes sir. Q. How close was Mr. Worsham to her when this cursing was going on? A. Passed right down the aisle. She was sitting opposite from me, passed between us. Q. Was anything said to Mr. Worsham about it? A. Yes sir; Mrs. Bell called to him. Q. Do you know what she said to him? A. No sir; when she said something to him he said: 'There is nothing to her; she is just drunk.' Q. Who said that? A. The conductor. Q. What did he do? A. Did not do anything; went out. Q. Did he notice her? A Looked at her and

kinder smiled. Q. He looked at her and smiled; made no effort to put her off? A. No sir; none at all. Q. Did he make any effort to stop her from cursing? A. No sir. Q. Say anything to her when she was cursing? A. Did not say anything to her at all. He started to go to her to get her ticket and Steve Gilbert said he had her ticket.''

Pearl Bell, after testifying in substance the same as Helen Jones, said that when the conductor came into the car shortly after the train left Middlesborough ''he passed me at first. I called him three or four times. Helen Jones pulled his coat and I told him that that woman was behaving herself very badly. Would like for him to do something for I would hate to report him. He said, 'She is only drunk; would not do any harm,' and smiled and went out of the coach.'' Other witnesses gave in effect the same evidence as these two women.

The conductor who was the only witness for the railroad company, in the course of his testimony said: ''All I know about the case is that I was conductor of the train, and immediately after the train left Middlesborough I proceeded with my duties of collecting the tickets, and I found a man in there, a colored man, that had three tickets for two ladies and one for himself. At the time I took up these tickets in the colored car I did not hear any indecent language or see anything out of the ordinary. After I got down the road towards Pineville somewhere Pearl Bell called my attention to this lady. She said her conduct was unbecoming, or words to that effect. I went back to where the lady was and started to say something, but there was a man with her said he would take care of her and see that she kept quiet, and I went on out. Q. Was she using any obscene language while you were in there? A. No sir; did not hear her use any obscene language. Q. Was she having her person exposed there or doing anything in a lascivious way while you were in there? A. No sir. Q. Was there anything about her conduct there that led you to believe that she would do anything of that kind while you were out of the car? A. Nothing whatever in her conduct that indicated that she was of a violent nature and would insult people, or anything like that. Q. Did you know she was under the influence of liquor by the way she was acting? A. I thought so; seemed to be in a jolly nature. I see that every day and consequently did not pay much attention.''

It further appeared that on a former trial of the case he testified that Mrs. Bell called his attention to the fact that this woman had been acting in an indecent way and using vulgar language. And also that there were twelve stations between the place where the woman got on and where she got off and that one of these stations was Pineville, the county seat of Bell County, but that he did not take any steps to put the Curry woman off the train at any of these stations or notify the peace officers at Pineville of her misconduct.

Steve Gilbert, the colored man to whom the conductor referred as the man who told him he would try to keep the woman quiet, said that he did not tell the conductor he would keep her quiet because he knew he could not do it.

On this evidence counsel for the railroad company asked the court to instruct the jury that if they found for the plaintiffs the measure of damage was the price they had paid for their tickets. But the court refused to give this instruction and instructed the jury: "If you shall believe from the evidence that at the time the defendant's conductor came into the passenger coach occupied by the plaintiff and the woman, Willie Curry, the said Willie Curry was in such a drunken condition and that her conduct, appearance, or condition was such as was reasonably calculated to induce the said conductor to anticipate, or have reasonable grounds to believe, that her talk or conduct in said coach was or would be annoying or disturbing to the plaintiff or other passengers thereon, and that thereafter the said Willie Curry, in the hearing of the passengers in said coach, including the plaintiff, used obscene, vulgar or indecent language, or exposed her person in an indecent manner in the presence of the plaintiff and that the plaintiff was damaged thereby, then the law is for the plaintiff and you ought to so find."

And advised them as follows as to the measure of damages: "If you find for the plaintiff, under the instructions herein, you will find for her such a sum in damages as you may believe from the evidence will fairly and reasonably compensate her for the humiliation, mortification, annoyance, discomfort and mental pain, if any or either, suffered by her, not to exceed, however, the sum of $3,000.00, the amount claimed in the petition."

The grounds relied on for reversal are: (1) that the court erred in not instructing the jury to find for the defendant: (2) in refusing to give the instruction offered in behalf of the railroad company; (3) for error in admitting incompetent evidence; (4) because the damages are excessive; (5) and because the verdict is not sustained by sufficient evidence.

No objection is made or could be made to the instructions given, as they submitted correctly the law of the case to the jury. The instruction offered was properly refused, because if the plaintiffs were entitled to recover, the measure of damage was that set out in the instruction given by the court.

Nor did the court err in refusing to direct a verdict for the railroad company, as there was ample evidence to take the case to the jury. In Hutchinson on Carriers, third edition, sections 980, 982 and 984, the duty of a carrier to protect its passengers from violence, obscenity or disorderly and annoying conduct on the part of other passengers and its liability if it fails to perform this duty, is well stated as follows:

"980. His passengers have the right to demand of him that a fellow-passenger whose indecent and ungentlemanly conduct renders him an object of serious annoyance to them, or whose condition or manner gives reasonable ground for apprehending personal injury from his recklessness or violence, shall be removed or be so guarded or confined that they may be free from the annoyance or the danger. And even without any such demand or suggestion from his passengers, it is a duty he owes to them, when the circumstances known to him are such as to create a reasonable apprehension of disorderly conduct or a breach of the peace upon his conveyance, which may alarm or endanger his passengers, to be vigilant and prompt to suppress it when it occurs. And if, aware of the disturbance, he fail to use all the means in his power to suppress it, he will be liable for any damages which may ensue from it to an innocent passenger. The passenger, from the time he enters his vehicle, has the right to claim the protection of the carrier from the insults and violence of others, whether entering it as passengers or not, and the law exacts from him the prompt employment of all the means at his command to protect the passenger against such outrages, either by quelling the disturbance or by the expulsion of

those engaged in it, if necessary. * * * In order that such omission may. constitute . negligence, there is involved the essential element that the. carrier or his servants had knowledge, or with proper care, could have had knowledge, that the wrong. was imminent, and that he had such knowledge or the opportunity to acquire it sufficiently long in advance of the infliction of the wrong upon the passenger to have.prevented it with the force ·at his command.

"982. The contract of carriage as to female passengers embraces an implied stipulation that the carrier will protect them against general obscenity, immodest conduct or wanton approach. * * * But this rule is also subject to the usual exception that the carrier is not liable for assaults on female passengers made. under such unusual circumstances that the carrier could not possibly have foreseen them.

"984. If a drunken and disorderly man is on the carrier's vehicle, it will not do to say, after a passenger has been subjected to insult or injury, that the carrier's servants did not know or·could not have foreseen that the particular individual who was insulted or injured was in danger of such insult or injury, if they were apprised, or with proper care could have known of circumstances which indicated that some one would be injured unless the disorderly passenger or stranger were ejected or controlled."

In Louisville & Nashville R.. R. Co. v. Ballard, 85 Ky., 307, the court, in the course of the opinion, in discussing the duty of a carrier to protect passengers, said: "As to female passengers, the rule goes still farther. Their contract of passage embraces an implied stipulation that the corporation will protect them against general obscenity, immodest conduct or wanton approach:" Illionis Central R. R. Co. v. Winslow, 119 Ky., 877; Illinois Central R. Co. v. Laloge, 113 Ky., 896; Kinney v. L. & N. R. R. Co., 99 Ky., 59.

These authorities, which are in harmony with the body of the law on this subject, sufficiently illustrate the duty of the carrier to protect passengers from violence as well as from vulgarity, obscenity, indecency and annoyance on the part of other passengers and its liability if it fails to perform this duty; and for the purpose of enabling carriers through their servants to perform with more diligence and effectiveness the duties of care

and protection indicated, it is provided in section 1342b of the Kentucky Statutes, that:

"1. Any person who shall, in or upon any railroad locomotive, passenger coach, interurban car, street car, or in or upon any vehicle commonly used for the transportation of passengers, or in or upon any common carrier, or in or about any railroad depot, station, ticket office, waiting room, or platform, drink any intoxicating liquor of any kind; or if any person shall be drunk or disorderly in or upon any railroad passenger coach, interurban car, street railway, or in or upon any vehicle commonly used for the transportation of passengers, or in or upon any common carrier, * * * such person or persons shall be deemed to be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than ten nor more than fifty dollars, or imprisoned not less than ten nor more than thirty days, or both so fined and imprisoned in the discretion of the court or jury.

"3. It shall be the duty of every railroad conductor of a steam, interurban or street railway, and station, depot, or ticket agent of said railway when he sees any person violating the provisions or any of them of section one of this act, to at once notify the nearest or most convenient sheriff, constable, town marshal or policeman, of the county in which the offense is committed, * * * and it shall thereupon be the duty of the officer so notified to arrest without delay any such person without any other evidence of his guilt."

It is further provided in section 806, of the Statutes, that "if any person whilst riding on a passenger or other train, shall, in the hearing or presence of other passengers, and to their annoyance, use or utter obscene or profane language, or behave in a boisterous or riotous manner, * * * he shall be fined for each offense not less than twenty-five nor more than one hundred dollars, or imprisoned in the county jail not less than ten nor more than fifty days, or both so fined and imprisoned; and it shall be the duty of the conductor in charge of any train upon which there is a person who has violated the provisions of this section either to put such person off the train, or to give notice of such violation to some peace officer at the first stopping place where any such officer may be."

In C. & O. Ry. Co. v. Crank, 128 Ky., 329; Com. v. Marcum, 135 Ky., 1; L. & N. R. R. Co. v. Byrley, 152 Ky.,

35; C. & O. Ry. Co. v. Gatewood, 155 Ky., 102; and C. & O. Ry. Co. v. Pruitt, 157 Ky., 133, we have given to these sections of the statutes a liberal construction to promote the purpose of their enactment, which was to protect well behaved and orderly passengers from violence, indignity or insult at the hands of other passengers, and to place in the power of the carrier adequate means to protect its passengers without subjecting itself to liability if it acts with reasonable prudence and discretion.

It is also settled by these authorities, and is pointed out in the instructions given, that liability does not attach to the carrier for acts of violence, indecency, obscenity or disorder on the part of a fellow passenger until the conductor or other railway employes charged with the duty of looking after the safety, care and comfort of the passengers know, or have reasonable grounds to believe, that the obnoxious passenger will be guilty of violent, offensive, obscene or disorderly conduct or the appearance, manner or conduct of the offending passenger is calculated to put a reasonably prudent person on notice that he may be guilty of this character of conduct. The carrier does not insure its passengers against the violence or misconduct of their fellow passengers. Its duty and corresponding liability begins when it knows, or has reasonable grounds to believe, that some action upon its part is necessary to protect the passengers in its care from assault or indignity at the hands of other passengers. But when the servants of the carrier discover or in the exercise of reasonable care could discover that a passenger is disorderly, or obscene, or is committing acts that may endanger the safety of other passengers, or that are offending the peace and quiet of other passengers, it is their duty to take such action as is authorized by the statute to remove from the car the offending passenger, or, if this is not practicable at the time, to take such other steps as may be required for the safety and protection of the other passengers.

Applying now these rules to the facts of this case, we find that although the conductor saw the drunken condition of this Curry woman and had his attention called to her misbehavior, he merely remarked with a smile that she was drunk and passed out of the coach. This was not a compliance with the duty of the carrier to the other passengers. He should have either ejected this woman

from the coach at the next station—and there were several stations between the place where his attention was called to her condition and conduct and the place at which she left the train—or he should have notified the peace officers at Pineville; but he did neither.

It is complained that evidence of this Curry woman's misconduct after the conductor's attention was called to the situation and before she left the train, was not admissible in evidence. What this woman did or said before the attention of the conductor was directed to her, or before, in the exercise of reasonable care, he could have discovered her drunken condition or misconduct, would not have been competent evidence unless it was brought to the notice of the conductor, but her misbehavior and misconduct after his attention was directed to her condition, or after it could have been discovered by the exercise of reasonable care, was admissible in aggravation of damages. Well behaved passengers are entitled to damages commensurate with all the indignity and humiliation they have suffered on account of the misbehavior and misconduct of disorderly and offensive passengers after the carrier has been apprised of the situation and has failed to take steps to remedy it, and evidence of such indignity and humiliation may be heard by the jury for the purpose of awarding such reasonable damages as the circumstances justify.

It is further said that the verdict is excessive. But relief on this ground must be denied. In cases like this, as in many others that come before us, there is no way of measuring with reasonable certainty what ought to be assessed, and so, as we have often said, unless the amount is so excessive as to appear to have been awarded under the influence of passion or prejudice, or is so disproportionate to the injury complained of as to seem at first blush unreasonable, we do not feel at liberty to interfere with the finding of the jury.

The judgment in each case is affirmed.