# Louisville & Nashville Railroad Company v. Bennett.

(Decided February 28, 1919.)

## Appeal from Daviess Circuit Court.

1. Carriers—Assault by Servant Upon Passenger.—The law makes a carrier of passengers responsible for the acts of his servant in charge of the passenger, and who for the time being has custody of him, with the implied obligation to exercise the highest degree of diligence and care to transport the passenger safely, and this duty requires that the carrier shall protect the passenger from violence or insults from whatever source they may arise.

2. Carriers—Assault by Servant Upon Passenger.—In an action by a passenger against the carrier for an assault committed by the servant of the carrier upon the passenger, the carrier will not be liable if his servant acts only in justifiable self-defense as against an assault committed by the complaining passenger, but no provocation consisting of mere insulting language will justify an assault upon a passenger, nor will such provocation excuse an assault by a passenger upon the servant of a carrier.

3. Carriers—Duty of Carrier to Protect Passenger—Force That May be Exercised.—It is the duty of the carrier to protect its passengers from insults and abusive language engaged in by another passenger, and in doing so it may use such force as may be reasonably necessary to arrest or eject the offending passenger, but no more, and if excessive force be employed, and the offending passenger is unjustifiably assaulted and injured, the carrier must respond in damages.

4. Carriers—Assault by Servant of Carrier—Instructions.—It is error in such cases to instruct the jury that if the plaintiff used abusive or insulting language intending to insult the carrier's servants, or to provoke an assault, that he thereby violated his contract of carriage and is on that account estopped from asserting his claim for damages, since this would place no limit upon the corrective methods which the carrier in such cases might employ.

5. Damages—Excessive Damages—Assault Upon Passenger by Servant.—Where a passenger was struck near the temple by a servant of the carrier who had a pencil in his hand, a part of which was broken off in the wound inflicted and remained there for four months, a large portion of which time plaintiff was prevented from eating solid food and from performing any labor and suffered severe pains for several months, a verdict for $1,000.00 will not be set aside as excessive.

BROWDER & BROWDER, W. P. SANDIDGE and BENJAMIN D. WARFIELD for appellant.

LOUIS I. IGLEHEART and BEN D. RINGO for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

By this suit the appellee and plaintiff below sought to recover from the appellant and defendant below $1,000.00 damages resulting from defendant's violation of its contract with plaintiff to safely carry him as a passenger on one of its trains from Owensboro, Kentucky, to Utica, Kentucky, a distance of about eleven miles. The violation alleged was produced by a willful, unlawful and unjustifiable assault made upon plaintiff by defendant's flagman after the former had boarded the car to be transported as indicated, and while the train was waiting in the yards at Owensboro to meet an incoming freight train. Compensation was sought only for loss of time, medical and physicians' bills, and for physical and mental pain suffered because of the assault.

In addition to denying the affirmative allegations of the petition, the answer pleaded (a) boisterous and disorderly conduct on behalf of the defendant and indecent language used by him to such an extent as to alarm and intimidate other passengers on the train, and (b) an assault by him on the flagman, and that the latter did no more than was reasonably necessary, or than appeared to him in the exercise of a reasonable discretion to be necessary, to protect himself from the threatened assault by plaintiff and to protect the other passengers from plaintiff's indecent language and conduct on the train. These defenses were put in issue and upon trial the jury returned a verdict in favor of plaintiff for $1,000.00, on which judgment was rendered. Defendant's motion for a new trial having been overruled, it prosecutes this appeal.

Three points are very strongly argued before us as grounds for a reversal, they being (1) that the verdict is flagrantly against the evidence; (2) that it is excessive, and (3) that the court erred in refusing to give to the jury instruction number five offered by the defendant at the trial.

Before taking up these grounds for consideration we deem it necessary to say that the law is now well established in this and other courts that out of the relationship of passenger and carrier the law implies a contract by the latter to exercise the highest degree of diligence and care to transport the former with safety and to protect him while the relationship exists from insults and wanton interference of strangers and fellow passengers, and from such insults, interferences or assaults from the

carrier or any of its servants, and for the violation of such implied contract the carrier is liable to the injured passenger for the damages that he might sustain. I. C. R. R. Co. v. Winslow, 119 Ky. 877; Winnegar's Admr. v. Central Passenger Ry. Co., 85 Ky. 547; L. & N. R. R. Co. v. Ballard, *idem.*, 311; Same v. Same, 88 Ky. 159; L. & N. R. R. Co. v. Donaldson, 19 Ky. Law Rep., 1384; Strull v. L. & N. R. R. Co., 25 Ky. Law Rep. 678; White v. South Covington, &c. St. Ry. Co., 150 Ky. 681; Louisville Railway Co. v. Dott, 161 Ky. 759, and L. & N. R. R. Co. v. Bell, 166 Ky. 400.

In the Winnegar case referred to, this court in stating the rule governing the duties of the carrier toward the passenger, said: "It is not material whether the violation consists in putting the passenger off at a point before his destination is reached, or by insulting him, or in assaulting him  They are all plain violations of duty, for which a recovery may be had. . . . The law makes the carrier responsible for the acts of the person in charge of the car, and who for the time has the voluntary custody of the passenger, with the implied obligation that he will exercise the highest degree of diligence to transport him safely. In Goddard v. Grand Trunk Railway, 57 Me. 202, Am. Rep. 39, it was held that the carrier was obliged to protect his passengers from violence or insult, from whatever source it arises. He must use all such reasonable precautions as are necessary for that purpose." This language was quoted with approval in the Winslow case, and we find no case in conflict with it.

While these high duties are imposed by the law upon the carrier, it is also the duty of the passenger to observe reasonable regulations and to deport himself upon the train in a decent and orderly manner. But it does not necessarily follow that if he should fail in any of these respects the carrier or any of his servants having him in charge would be authorized in applying unlimited corrective methods to the passenger as the carrier or his servant might conclude necessary for the occasion. If the passenger becomes so unruly, insulting, boisterous or indecent as to justify it, he might be ejected from the train, since by such conduct he would forfeit his rights as a passenger and the carrier under his duty to other passengers would be authorized in the manner indicated to remove the recalcitrant passenger from the train provided it was attended with no danger to the latter. The

cases further agree that if the carrier or his servant in charge of the passenger is assaulted by the latter and thereby placed in danger or apparent danger of death or great bodily harm, the carrier or his servant in the exercise of the right of self-defense may administer such punishment to the passenger as may be necessary or in the exercise of a reasonable discretion appears to be necessary to avert the danger. But beyond these limits the carrier is not authorized to go without incurring responsibility to the passenger for the injuries sustained. With these rules before us we will as briefly as possible consider the three grounds relied upon for a reversal.

With reference to the (1) contention, the facts are that defendant's train left Owensboro for Utica at about 3:45 p. m. Plaintiff had been in Owensboro since about twelve o'clock that day, the greater portion of which time he had spent in a dental office, where he had seven teeth extracted. According to his testimony, and the witness who was with him throughout the time, he took one drink of liquor before going to the dental office. There was scarcely time to get from the dental office to the depot to catch the train, and plaintiff's companion purchased the tickets while the former boarded the train, entering the smoking compartment which, as well as the ladies' coach, was very much crowded with passengers. There being no vacant seat, plaintiff sat down in the lap of an acquaintance with his feet hanging over the arm of the seat, when the conductor approached him and the other passengers upon that seat requesting their tickets. Plaintiff's companion, who was nearby, handed the tickets to the conductor, but the passenger in whose lap plaintiff was sitting could not get to his ticket, since plaintiff was reclining upon his arm. The conductor requested plaintiff to rise up, which he did, according to the testimony of the conductor, who about that time turned to the other side of the car and began taking up tickets from other passengers, when he heard the flagman, who was standing close by, say to plaintiff, "Keep your hands off of me," when plaintiff replied, "You God dam son of a bitch, do you think you can run over me?" Whereupon, the flagman struck him. The testimony of the flagman on this point is: "Bennett was sitting in two men's laps in one seat and the conductor asked him to get up so the old gentleman could get his ticket out of his pocket and he got up and he told him to

stand out of the seat; there wasn't room enough for the old man to get into his pocket to get his ticket, and he asked him to stand around, and the conductor turned his back taking tickets on the other side of the car and it seemed like he didn't pay any attention to the conductor and I said, 'Stand back so the old man can get his ticket.' The train was crowded. We had a big crowd out of Owensboro, and I caught hold of him and pulled him so the old man could get his ticket out of his pocket and he grabbed hold of him and jerked him around, and I told him not to do it, and finally he grabbed me around the neck and I told him to 'Keep your damn hands off of me,' and young Max Howard said, 'Lorenza, behave yourself; these men haven't got time to fool with you,' and he said this God damn son of a bitch can't run over me, and then I hit him.''

Other passengers heard the language attributed to plaintiff by the conductor and flagman, but did not know who spoke it, while plaintiff and his companion say that no such language was used by plaintiff until after he had been assaulted and struck by the flagman.

Plaintiff testified that as he was raising up the flagman took hold of his arm and pulled him out and that he, plaintiff, went forward and in doing so laid his hand against the flagman's breast, who said, ''Keep your damn hands off of me;'' that at that time the conductor pulled him around and as he did so the flagman struck him.

From this it will be seen that there is but little substantial conflict in the testimony as to what occurred except as to the opprobrious epithet which defendant's witnesses say plaintiff used toward the flagman. Whether he did so or not—even if it were decisive of the case—was a question upon which there was a contrariety of proof, and one for the determination of the jury. While such insulting language might mitigate the assault and perhaps the damages on account of it, it does not furnish complete justification for the assault, even as between individuals sustaining no relationship of passenger and carrier, and *a fortiori* it would not be a justification where such relationship existed.

The case of White v. South Covington & C. Ry. Co., *supra,* was one brought to recover damages for maltreatment of the passenger by the conductor, and defenses similar to those here were relied upon by the defendant. This court, in passing upon the questions raised,

quoted from 6 Cyc 602, saying: "If the servant of a carrier acts only in justifiable self-defense as against an assault by a passenger, the carrier will not be liable; but no provocation consisting in mere insulting language will excuse an assault." Further along in the opinion the case of B. & O. R. R. Co. v. Barger, 26 L. R. A. 220, is referred to and relied upon, the court saying that "An assault by the conductor upon a passenger is not excused or the liability of the carrier defeated by the fact that the passenger had used grossly profane and abusive language to the conductor without provocation."

The lick knocked plaintiff about fifteen feet down the aisle, and one witness says that as plaintiff was falling backwards from the force of the stroke, witness saw a knife in his hands. This is denied by plaintiff, and no other witness testified to the fact. There is also contradiction in the testimony as to whether plaintiff at the time he was struck had his hands in his pockets. But the attitude of plaintiff just before and at the time of being struck was necessarily submitted to the jury in the self-defense instruction, and its finding that the flagman was not in any real or apparent danger from the hands of plaintiff is amply supported by the testimony. Furthermore, if plaintiff's conduct and the appearances produced thereby were such as to create the belief on the part of the flagman that he was in danger of bodily harm, he then had the right to use no more force than reasonably appeared to him to be necessary to free himself from the danger. Plaintiff was struck near the left temple, and about two inches of a lead pencil which the flagman had in his hand, broke off in his cheek and was driven next to the cheek bone, and penetrated some two or three inches below the point of entrance. The injury was inflicted on February 2, and the location of the broken pencil was not discovered until about the first of June following. In the meantime the wound had been lanced some seven or eight times and an X-Ray examination made about the first of May failed to reveal the presence or location of the piece of pencil. Plaintiff's pain and suffering was almost constant, and very severe. There were times when he could take no solid food, since he could but partially open his mouth, and could not masticate his food. Even if it be conceded that plaintiff used the insulting language with which he is charged, and that he had his hands in his pockets at the time—both of which

finds contradiction in the testimony—it can not be insisted that these acts on his part merited the severe punishment inflicted. .

Much stress is made in brief about language attributed to plaintiff after he had been injured and while going through the train hunting for the flagman, but however opprobrious such language, if any, might have been, it can not heal the prior breach of defendant's contract made by the unjustifiable assault of the flagman. It may have been sufficient cause to authorize, as hereinbefore intimated, the ejection of plaintiff from the train, but it can not be permitted to have the effect of curing a wrong previously committed.

In saying what we have, we would not be understood in the least as condoning any unbecoming conduct or offensive language on the part of a passenger, whereby the quietude and sense of decency of other passengers are offended. We only mean to say that in our opinion the facts of this case did not authorize the character of assault made upon plaintiff by defendant's flagman. At any rate, the jury were authorized to so find, and we do not think their verdict is subject to the criticism of being flagrantly against the evidence, or even against the preponderance of the evidence.

What we have said is sufficient to dispose of the (2) ground relied upon. Plaintiff not only underwent seven or eight operations, but as stated, suffered excruciating pains. His face was greatly swollen for months, accompanied by fever, and the wonder is that with the pencil buried in his face he escaped with so little disastrous consequences. According to his testimony he was wholly disabled from work for a period of three months, and it was with some difficulty that he worked at all. For as much as six weeks he was fed with a spoon, and the suppuration from the wound made by the pencil, together with the consequent pain and suffering, kept him from sleeping and required the use of an extra cloth on his pillow at night.

The rule in cases like this is that the fixing of the amount of damages must be left largely with the sound discretion of the jury, and unless the amount returned is so excessive as to strike the mind at first blush as having been returned under the influence of passion or prejudice, the verdict will not be disturbed. Larger verdicts against carriers for violation of their duty to passengers,

where the testimony showed less injuries and the conduct of the carrier or his servant was less aggravating than that of the flagman in this case, have been upheld by this court. L. & N. R. R. Co. v. Ballard, *supra.* Under the circumstances, and the rule, *supra,* by which we are to be governed in cases like this, we can not say that the verdict in this case was excessive.

Under the (3) objection urged against the judgment the instruction offered by defendant which the court declined to give said to the jury:

"The court instructs the jury that if they should believe from the evidence that at the time and place of the alleged injuries complained of the plaintiff, Bennett, used any abusive or insulting language, in the presence of other persons, intending thereby to insult defendant's flagman, Morgan, or with the intention to provoke an assault by said Morgan, then and in that event the plaintiff was guilty of a violation of law, and also violated his contract of carriage with the defendant and is on that account estopped from asserting the claim for damages sued on in this action."

This instruction ignores the limitations which the law places upon the right of a carrier in dealing with recalcitrant and unruly passengers, even if the evidence in this case was sufficient to so characterize plaintiff at the time he was struck by the flagman. Those limitations, as we have seen, go no further than to permit the carrier to eject the passenger, and to use no more force than was necessary to arrest or put him off of the train. The offered instruction would take from a passenger who had been guilty of using abusive or insulting language all rights, and would arm the carrier with the right to inflict upon him such punishment as he or his servants might see proper to administer. And howsoever severe that punishment might be, the passenger would be barred from asserting his claim for damages upon the ground that he was estopped to do so because of his own insulting or abusive conduct. No cases have been cited from this or any other court establishing such a doctrine. On the contrary, as we have seen, such conduct on the part of a passenger furnishes no authority for the infliction of the character of punishment which the plaintiff's witnesses testified he received on the occasion in question. Neither would insulting language from the carrier's servant to the passenger authorize an assault by him upon such servant. Louisville Ry. Co. v. Frick, 158 Ky. 450.

The instructions given by the court fully covered the law of this case and completely protected the rights of each litigant.

It is insisted that the rule requiring plaintiff in cases like this to make all reasonable efforts to minimize his damages should have been submitted to the jury under the facts of this case because, as alleged, his wounds were permitted to linger and his suffering prolonged because of the unskillfulness of his physicians in not sooner discovering and extracting the piece of pencil left in his face. The rule of law contended for is well established and should be applied in all cases where the facts authorize it. I. C. R. R. Co. v. Gheen, 112 Ky. 695; L. & N. R. R. Co. v. Reaume, 128 Ky. 90, and I. C. R. R. Co. v. Wilkins, 143 Ky. 572. But in this case nothing appears to show any want of diligence on the part of plaintiff in this regard. He consulted and submitted to the treatment of three different physicians, none of whom is shown to be unskilled in his profession. Nor did the plaintiff know that fact, if it was a fact. Moreover, the latest and most approved test (X-Ray picture) was applied and failed to reveal the location of the pencil. However, if all these objections were removed, defendant could not take advantage of the error, if one, since no instruction was offered presenting this phase of the case.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.