## Southeastern Greyhound Lines v. Conklin.

October 15, 1946.

88

H. C. Gillis, Robert L. Smith and R. W. Keenon for appellant.

Thomas F. Young and Stephens & Steely for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

The action is for damages allegedly resulting from the commission of a tort by the driver of one of appellant's busses, in causing appellee to be ejected from the bus. Judgment was pronounced upon a verdict for appellee in the sum of $2,500. Appellant alleges numerous errors in support of its contention the judgment should be reversed, the first of which is that the Whitley Circuit Court did not have jurisdiction of the action.

In so far as pertinent, Section 73 of the Civil Code of Practice provides: "* * * An action against such (common) carrier for an injury to a passenger, * * *, must be brought in the county in which the defendant, or either of several defendants, resides; or in which the plaintiff or his property is injured; or in which he resides, if he resides in a county into which the carrier passes; * * *."

Section 74 of the Civil Code of Practice, in so far as pertinent, recites: "Every other action for an injury to the person or property of the plaintiff, and every action for an injury to the character of the plaintiff, against a defendant residing in this State, must be brought in the county in which the defendant resides, or in which the injury is done."

Appellee claims no damage for injury to his character; and since appellant is a common carrier, and a mental injury is a personal injury, Kingam & Co. v. Ossam, 75 Ind. App. 548, 121 N. E. 289, Section 73, supra, fixes the jurisdiction of the Court. The action concededly was not brought in the county in which the defendant resides, nor in the county wherein the acts complained of occurred; but it was brought in a county through which the carrier passes, and if that county was the county of appellee's residence at the time the action

was instituted, the Whitley Circuit Court had jurisdiction. The evidence shows appellee to be a registered voter in the State of Nebraska; but because of, and as an incident to, his employment of procuring war workers for the rocket plant of E. I. DuPont Company, at Charlestown, Indiana, he lived continuously in an apartment and hotels in Whitley County from December, 1944, to August 28, 1945. The acts complained of occurred August 3, 1945, and the suit was instituted on August 22, 1945. In Louisville & N. R. Co. v. Mitchell, 162 Ky. 253, 172 S. W. 527, 529, the Court, in construing Section 73 of the Civil Code of Practice, and quoting from Bouv. Law Dict., Rawle's Third Revision, p. 2920, said: " 'Residence indicates permanency of occupation, as distinct from lodging, or boarding, or temporary occupation. It does not include as much as domicile which requires an intention combined with residence. One may seek a place for purpose of pleasure, of business, or of health. If his intent be to remain it becomes his domicile; if his intent be to leave as soon as his purpose is accomplished, it is his residence.' "

Appellee's stay in Whitley County was indefinite, and he intended to, and did, leave as soon as, but not until, his superiors assigned him to another territory. When that occurred, but not until it occurred, his purpose in residing in Whitley County was accomplished; but until his purpose was accomplished, he was a resident of Whitley County within the meaning of Section 73 of the Civil Code of Practice as construed in Louisville & N. R. Co. v. Mitchell, supra, and the Circuit Court in that county had jurisdiction of the action.

Appellant next contends the petition fails to state a cause of action founded on tort. Appellee alleged that he had purchased a ticket from Middlesboro to Corbin, presented it to the driver of the bus who accepted it in payment of the fare; whereupon appellee took his seat in the bus. He then alleged "that the defendant's agent and driver who was then in charge of its said bus, in a high-handed, boisterous and insulting manner, and without cause for so doing, demanded that this plaintiff leave the said bus, refused to let him ride thereon to Corbin, Kentucky, or to any other point, called a police officer and had said officer arrest this plaintiff without a warrant for his arrest and had said officer remove this plain-

tiff from said bus.'' Where one has purchased a ticket, has been accepted as a passenger by a common carrier, and is wrongfully expelled as a passenger from the coach, but such expulsion is not attended by abuse to the person expelled, the carrier, through its agents, is liable for a breach of contract. Louisville & N. R. Co. v. Wells, 219 Ky. 718, 294 S. W. 143; and Louisville & N. R. Co. v. Thomas, 298 Ky. 494, 183 S. W. 2d 19. But where the wrongful expulsion is attended by tortious acts, such as assaulting or attempting to assault the passenger, or using profane or abusive language, or by other insulting conduct, the carrier is guilty of having committed a tort, and is liable therefor in damages. Louisville & N. R. Co. v. Fowler, 107 S. W. 703, 32 Ky. Law Rep. 1021; and Louisville & N. R. Co. v. Thomas, supra. The case of Dierig v. South Covington & C. St. Ry. Co., 72 S W. 355, 24 Ky. Law Rep. 1825, relied on by appellant, is not in point. In that case, the petition failed to allege facts showing the plaintiff to have been a passenger of the Street Railway Company, and failed to allege that he was expelled from the car without cause. The Court held that the petition was fatally defective. But here the petition alleges appellee to have been a passenger on the bus, to have been expelled therefrom without cause, and that, in expelling him from the bus, the driver thereof was guilty of tortious acts. Clearly, the petition states a cause of action founded on tort.

The next complaint is that the Court erred in admitting incompetent evidence. Appellee introduced testimony to the effect that, after he was escorted from the bus, the officers who had been called by the driver arrested him and took him to jail, whereupon he was released on bond to appear, which he did, in Police Court the following morning. The officers did not arrest him and take him to jail at the direction of the driver of the bus; wherefore, the evidence of this conduct on the part of the policemen was incompetent. The appellee, in open Court, withdrew the allegations of the petition in respect to mental suffering, humiliation, and embarrassment occurring after he had been taken off of the bus by the officers, and moved the Court to instruct the jury not to consider this evidence in arriving at its verdict. The Court sustained the motion and admonished the jury accordingly. Thereupon, appellant moved the

Court to set aside the swearing of, and to discharge, the jury, because of the prejudice the incompetent evidence already had instilled in the minds of the jurors. This motion was overruled. Clearly, the evidence was incompetent, and on the second trial should not be admitted; but since the case must be reversed for another reason, it is unnecessary for us to determine the prejudicial effect of the error. The jury also was permitted to hear evidence as to the humiliation and embarrassment caused to the wife of appellee, who was present when her husband was expelled from the bus. This, too, was incompetent, as she was not a party to the action. Shields' Adm'rs v. Rowland, 151 Ky. 136, 151 S. W. 408. On the next trial, the Court will not permit evidence to this effect to be introduced.

The contention that the Court erred in overruling appellant's motion for a peremptory instruction at the conclusion of all the testimony requires a brief statement of the evidence. Appellee, in company with his wife and ten year old son, purchased three tickets for passage on appellant's bus from Middlesboro to Corbin. He waited about thirty minutes for the bus to arrive. Upon its arrival the driver of the bus requested the waiting passengers to permit the outbound passengers to alight before entering the bus, and to permit a Lieutenant in the Army and a Lieutenant in the WAC to enter first. Immediately after the Lieutenants boarded the bus appellee presented three tickets to the driver and climbed upon the steps of the bus. He testified that a Negro woman pushed his wife and son aside and preceded them into the coach. He said that he called to his wife not to let them push her around, and asked the driver, "How come you let the Negro on in front of her?" The driver told him to go back and take a seat. He further testified: "I stood there and argued with him about that point until my wife and boy got on the bus. We were preceded by the two Lieutenants, and the colored lady. My wife and myself and boy were the third to sixth ones on the bus, and we took our seats."

He then stated that nothing occurred thereafter until the driver had accepted all the passengers and re-entered the bus. The driver then reopened the argument and said, "Some of these people riding the busses think they are privileged characters. He should, this man

(meaning appellee) should, learn to treat a lady as she should be treated." The driver then referred to him as a "smart aleck," and addressed him in the following manner: "I ought to throw you off the bus." Appellee retorted that the driver "didn't come big enough to throw me off the bus." The driver said, "'I will show you,' and I said, 'You had better have some help, because you can't throw me off. I paid my fare and have my seat.' " The driver then sent for the officers, directed them to remove appellee from the bus; each of the officers took him by arm, searched him, and required him to leave the coach.

In determining whether the evidence was sufficient to be submitted to the jury, we must give full weight to the testimony of appellee. If he testified truthfully, he provoked the first argument with the driver. But that verbal clash was over, and the driver, without provocation at that point (according to appellee's testimony), reopened the controversy and provoked the situation resulting in appellee's being required to leave the bus. Undoubtedly, appellee was entitled to have his theory of the driver's responsibility for what occurred submitted to the jury. The Court properly overruled appellant's motion for a directed verdict.

The next objection is to the instructions to the jury, and specifically to Instruction No. 3, which is in the following language: "If the jury believe from the evidence that upon the time and occasion mentioned in the evidence, the plaintiff, H. P. Conklin, was himself guilty of such conduct as would make him objectionable to other passengers or prospective passengers, then the defendant bus company had the right to have him ejected from the bus, using no more force than was necessary for that purpose, and if the jury so believe, your finding will be for the defendant bus company."

Appellant claims that, in lieu of Instruction No. 3, it was entitled to Instruction A, offered by it and refused by the Court. The offered instruction reads: "If you believe from the evidence that the plaintiff's conduct was such that the driver of the bus believed or had reasonable grounds to believe that the plaintiff did or would become objectionable to other passengers or prospective passengers who desired to use said bus, then the driver

of said bus had the right to refuse to transport the plaintiff at the time referred to in the evidence, and if you believe from the evidence that the plaintiff was conducting himself in such a manner, then the driver of said bus had the right to cause said plaintiff to leave said bus providing in so doing he used no more force than was reasonably necessary for said purpose.''

Technically, Instruction A more clearly states the applicable law than does Instruction No. 3. It is unnecessary for us to determine whether this error alone would be sufficiently prejudicial to warrant a reversal of the judgment; however, on the next trial the Court will give Instruction A in lieu of Instruction No. 3.

Complaint concerning improper argument of counsel for appellee is well taken. On the next trial, if affidavits filed in support of a motion for continuance are read as the testimony of the absent witnesses, counsel will not refer to the fact that he has had no opportunity to cross-examine the witnesses; nor will he refer to the humiliation suffered by the wife of appellee, nor to any other incompetent testimony.

But the most serious complaint, and the one requiring reversal of the judgment, is that the verdict is excessive. There can be no doubt that situations of this kind cause embarrassment and humiliation to all concerned. But the period of embarrassment which it was competent to show in this action was of short duration; and there is no showing that appellee was humiliated before persons with whom he was acquainted, other than his wife and son. Nor can we lose sight of the fact that he had first provoked a situation which, to the ordinary person, would have been as embarrassing as the one the driver provoked under appellee's testimony. We are of the opinion that one who publicly and boisterously provokes an argument with a bus driver, over the conduct of a passenger (for which the driver is not responsible), is not the type of person who would be humiliated or embarrassed to any appreciable degree upon being wrongfully expelled from a bus. Irrespective of this fact, and making no allowance therefor, the award of $2,500 is so grossly excessive as to strike the mind at first blush as having been rendered as the result of passion and prejudice on the part of the jury; and which

can be accounted for only by the introduction of the incompetent evidence, although the Court admonished the jury not to consider it.

Since the case must be reversed, it is unnecessary to pass on the alleged error of the Court in refusing to continue the case because of the absence of witnesses.

The judgment is reversed, with directions that appellant be granted a new trial, to be conducted in conformity with this opinion.