RENDERED:  OCTOBER 2, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1074-MR

ANDRIA KENDALL                                                                    APPELLANT

APPEAL FROM KENTON CIRCUIT COURT
v.        HONORABLE GREGORY M. BARTLETT, JUDGE
ACTION NO. 15-CI-01844

COMMUNITY CAB COMPANY, INC.; AND
NK MANAGEMENT, LLC                                                         APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE:  Andria Kendall appeals from orders entered by the Kenton

Circuit Court dismissing her claim against Community Cab Company, Inc., and

NK Management, LLC (collectively, Community Cab), for breach of contract for

safe passage, and denying her motion to alter, amend, or vacate, entered on May

23, 2019, and July 10, 2019, respectively. Following review of the record, briefs, and law, we reverse and remand.

On October 10, 2010, Andria Kendall accompanied friends to a retail and entertainment center known as "Newport on the Levee." At the end of the evening, Kendall decided to take a cab to return home. She and a friend entered a cab owned and/or operated by Community Cab and driven by Mohamud Abukar. During the drive home, Kendall and her friend fell asleep. Kendall awoke to discover Abukar brutally raping her. Abukar was later convicted of first-degree rape in Kenton Circuit Court.

Kendall hired an attorney, Mark Godbey, to represent her in a civil suit against Community Cab arising out of her sexual assault. However, Godbey failed to file suit on behalf of Kendall. In a separate case from the one at bar, Kendall filed a legal malpractice claim against Godbey claiming, among other things, that her case against Community Cab was now time-barred as the one-year statute of limitations for personal injury actions had expired. *See* KRS[1] 413.140. Herein, Kendall filed suit against Community Cab on the separate theory of breach of contract of safe passage. The statute of limitations had not yet expired for a breach of contract claim. *See* KRS 413.120.

---

[1] Kentucky Revised Statutes.

Community Cab filed a motion to dismiss in Kenton Circuit Court, which the trial court granted on May 23, 2019. The trial court ruled that while Kendall had labeled her claim a contract claim, it was in reality a claim for personal injury. Therefore, the court concluded the one-year statute of limitations for personal injury applied as opposed to the five-year statute of limitations for contractual claims and, consequently, Kendall's claim was barred because it had been filed nearly five years after her rape. This appeal followed.

When a motion is made pursuant to CR[2] 12.02(f) for dismissal for failure to state a claim upon which relief may be granted, "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987) (citation omitted). "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo.*" *Littleton v. Plybon*, 395 S.W.3d 505, 507 (Ky. App. 2012) (citation omitted).

Kendall contends herein that Community Cab breached an oral contract of safe passage by failing to sufficiently vet Abukar prior to employing him to drive its taxicab. She claims no one at Community Cab conducted a

---

[2] Kentucky Rules of Civil Procedure.

background check on Abukar or otherwise investigated his employment documentation and thereby failed to utilize the highest duty of care for its customers, such as Kendall.

Community Cab argued, and the trial court agreed, because Kendall sought damages for personal injuries, she was improperly attempting to turn a personal injury action into a contract action in order to escape the one-year statute of limitations. Consequently, the trial court determined Kendall's claim was barred by the applicable statute of limitations for personal injury. We disagree.

The concept of a carrier's duty of safe passage is an old and unique one. Kendall relies upon the earliest Kentucky case recognizing this claim, *Sherley v. Billings*, 8 Bush 147, 71 Ky. 147 (1871). Therein, Billings, a teenage boy, while traveling on a steamboat, was assaulted and injured by one of the carrier's employees. The employee, tasked with the duty of collecting the passage fare, had approached Billings and demanded payment. Billings complied and paid the fare. However, the clerk apparently believed Billings had been hiding to avoid paying the fare and subsequently assaulted him. Billings then brought suit against the owners of the steamboat, seeking damages for the injuries he sustained at the hands of the boat owners' employee. The boat owners argued they were not responsible for the consequences of the employee's "willful and unauthorized tort[.]" *Id.*, 71 Ky. at 150. The Court disagreed, however, holding:

-4-

In this case the appellants are common carriers of passengers. They do not undertake absolutely to insure the safety of those subjecting themselves to their control; but the law holds them to "the strictest responsibility for care, vigilance, and skill on the part of themselves and those employed by them." They are required to behave toward their passengers "with civilty [sic] and propriety, and to have servants and agents competent for their several employments, and for the default of [their] servants or agents in any of the above particulars, or generally in any other points of duty, the carrier is directly responsible." (2 Parsons on Cont., 5th ed., 225.)

Every individual who commits his person to the custody and government of others has the right to expect from them the highest practicable degree of care and skill. So likewise has he the right to expect protection from injuries or outrages at the hands of strangers or of fellow-passengers, if by the use of reasonable foresight such injuries could have been anticipated and averted. *This protection passengers upon steamboats must receive from the officers of the vessels, and it is one of the stipulations of the implied contract between the carrier and the passenger that such protection shall be afforded by these officers.* They represent the carrier, are selected by him, and it is his imperative duty to see that the passenger is treated by them with "civility and propriety."

*If these officers fail to use reasonable diligence in the protection of the passenger from injuries at the hands of strangers or other passengers the contract is violated, and the carrier can be held responsible for such damages as the injured passenger may have sustained by reason of such failure.* To our minds both the reason and philosophy of the law demands that such contract shall protect the passenger from injuries and insults at the hands of those who, for the time being, are intrusted [sic] with the custody of his person.

*Id.* at 151-52 (emphasis added).  Kentucky courts have consistently recognized this implied contract of safe passage as a cause of action since *Billings* was decided in 1871.  It is not essential for liability that the employee be acting within the scope of his employment at the time he commits the wrong:

> Ordinarily a master is liable to a third person for injuries inflicted by a servant only when the servant is acting within the scope of his employment but in the case of certain voluntary relationships entered into between a master and another liability may be imposed upon the master in favor of such other on account of wrongs inflicted by a servant even though the servant may have been acting for his own purposes and with no intent to benefit the master—it is immaterial that the servant may have been acting beyond the scope of his employment. Such a voluntary relationship is that of carrier and passenger.  It is in the light of that relationship that the question must be determined.
>
> It is the rule in this state, and the almost universal rule, that a carrier is liable for assaults committed on passengers by its employees whether the assault is in the supposed interest and discharge of a supposed duty to the carrier or was merely that of an individual motivated by conceptions of personal wrong and entirely disconnected with the performance of a duty.  13 C.J.S., Carriers, § 689, p. 1273, 10 A.J. 263, Restatement of the Law, Agency, 475; Payne v. Moore, 196 Ky. 454, 244 S.W. 869; Louisville & N. R. Co. v. Bennett, 183 Ky. 445, 209 S.W. 358; Illinois Cent. R. Co. v. Winslow, 119 Ky. 877, 84 S.W. 1175; Winnegar's Adm'r v. Central Passenger Ry. Co., 85 Ky. 547, 4 S.W. 237; White v. South Covington & C. St. R. Co., 150 Ky. 681, 150 S.W. 837, 839; Wise v. Covington & C. St. Ry. Co., 91 Ky. 537, 16 S.W. 351.

*Gladdish v. Southeastern Greyhound Lines*, 293 Ky. 498, 169 S.W.2d 297, 299

(1943). *See also Southeastern Greyhound Lines v. Conklin*, 303 Ky. 87, 196

S.W.2d 961, 963 (1946); *Howard v. Middlesborough Hosp.*, 242 Ky. 602, 47

S.W.2d 77, 79 (1932); *Illinois Cent. Ry. Co. v. Winslow*, 119 Ky. 877, 84 S.W.

1175, 1176 (1905).[3]

Furthermore, courts have consistently held carriers to the highest duty

of care. Another panel of our Court stated in Kendall's suit against her former

attorney that,

> [r]egarding the standard of care, Kentucky has long
> recognized the common carrier standard of care. A
> common carrier of passengers owes those passengers the
> highest degree of care in transporting them to protect
> them from "dangers that foresight can anticipate and to
> exercise the utmost skill, diligence and foresight for
> [their] safety, consistent with the practical operation of
> his bus." *Wise v. Fannin*, 306 Ky. 327, 207 S.W.2d 764,
> 765 (1948). Indeed, "[a] common carrier owes its
> passengers a higher degree of care than does the operator
> of a private vehicle." *Indianapolis & Southeastern
> Trailways, Inc. v. Blankenship*, 444 S.W.2d 267, 268
> (Ky. 1969) (citing *Adams v. Louisville Taxicab &
> Transfer Co.*, 307 Ky. 405, 211 S.W.2d 397, 399 (1948)).
>
> Community Cab, which is engaged in the business
> of transporting passengers for hire is considered a

---

[3] Although the theory of liability based on contracts of safe passage is an old one, more recent case law demonstrates it remains a viable cause of action. *See*, *e.g.*, *Stropes by Taylor v. Heritage House Children's Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 251 (Ind. 1989); *Marshall v. United Airlines*, 35 Cal.App.3d 84, 86 (Cal. Ct. App. 1973); *Crites v. Delta Air Lines, Inc.*, 341 S.E.2d 264, 266 (Ga. Ct. App. 1986); *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018); *Higgins v. New Orleans Public Serv., Inc.*, 347 So.2d 944, 946 (La. Ct. App. 1977); *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244 (Va. 2019).

common carrier, and therefore, under the duty to use the highest degree of care for the safety of its passengers. Taxi cabs are included under the common carrier standard of care, and "'[t]he highest degree of care' means the utmost care exercised by prudent and skillful persons in the operation of the conveyance." *Shelton Taxi Co. v. Bowling*, 244 Ky. 817, 51 S.W.2d 468, 470 (1932) (citations omitted).

*Kendall v. Godbey*, 537 S.W.3d 326, 332-33 (Ky. App. 2017). As noted in

*Gladdish*,

[t]he liability of a carrier . . . is based upon its broad duty to protect its passengers from assault. The carrier's obligation is that the contact between passenger and employee brought about by the passenger being placed in the custody of the employee will not result in an unjustified assault upon the passenger.

169 S.W.2d at 299.

Nevertheless, Community Cab maintains that it matters not whether claims for damages for personal injury are sought on the basis of contract; those claims must be considered as claims for personal injury invoking the one-year statute of limitations. It refers us to *Southeastern Greyhound Lines v. Conklin* for this proposition. Therein, Conklin was a passenger on a bus who claimed:

the defendant's agent and driver who was then in charge of its said bus, in a high-handed, boisterous and insulting manner, and without cause for so doing, demanded that this plaintiff leave the said bus, refused to let him ride thereon to Corbin, Kentucky, or to any other point, called a police officer and had said officer arrest this plaintiff without a warrant for his arrest and had said officer

-8-

remove this plaintiff from said bus.

*Conklin*, 196 S.W.2d at 963. Southeastern Greyhound argued Conklin had failed

to "state a cause of action founded on tort." *Id*. at 962-63. The Court therein,

however, determined "where the wrongful expulsion is attended by tortious acts …

the carrier is guilty of having committed a tort, and is liable therefor in damages."

*Id*. at 963 (citations omitted). Despite Community Cab's reliance, we see nothing

in *Conklin* limiting the plaintiff's cause of action only to a tort claim. The Court

therein merely addressed Southeastern Greyhound's argument that Conklin had

failed to make a claim in tort.

Contrary to the trial court's conclusion—and Community Cab's

argument herein—there are claims from which an action may properly be

maintained based in both contract and tort. As noted in *Prosser and Keeton on the*

*Law of Torts*,

> [w]hen one undertakes custodial care of another such as
> when a common carrier undertakes to transport a
> passenger or when a hotel provides a room for a patron,
> the relationship thus created by the bargaining transaction
> results in the creation of duties of affirmative action such
> as protection from the misconduct of third persons that is
> separate and apart from the promises made and intentions
> manifested. Therefore, the breach of these affirmative
> duties imposed by law [i.e., torts] may coincide with an
> implied promise giving rise to a contract action for
> breach of the promissory obligation.

W. PAGE KEETON, *ET AL.*, PROSSER AND KEETON ON THE LAW OF TORTS § 92 (5th ed. 1984). Clearly, in view of *Billings*, Kentucky courts have so held.

The trial court herein focused on the type of damages sought in determining that Kendall's complaint constituted a tort action rather than one in contract.[4] However, *Billings* certainly holds otherwise. The facts therein are particularly relevant to Kendall's action. As is the case here, Billings was intentionally injured by an employee of the defendant. Moreover, he sought damages for the physical injuries he suffered at the hands of the employee, as well as emotional distress. In this regard the Court held:

> It was the province of the jury by their verdict to compensate the outraged passenger not only for the loss of his eye, but for the mental sufferings caused by the shameful indignities to which he was subjected; and to enable them to do this it was necessary that all the particulars of the transaction should be disclosed. It results therefore that this evidence was properly permitted to go to the triers of the cause.

*Id.*, 71 Ky. at 155.

Thus, the fact that the damages sought are for personal injuries is not determinative of the nature of the *claim*. While the actions of Abukar were

---

[4] The precedent upon which the trial court relied, *Overstreet v. Kindred Nursing Ctrs. Limited P'ship*, 479 S.W.3d 69 (Ky. 2015) and the unpublished decisions in *Brown v. Furnish*, No. 2004-CA-000948-MR, 2005 WL 1314815 (Ky. App. Jun. 3, 2005), *Cornelius v. Louisville Metro Dep't of Corrections*, No. 2017-CA-000304-MR, 2018 WL 3602949 (Ky. App. Jul. 27, 2018), and *Coy v. Louisville Jefferson Metro Gov't*, No. 3:06-CV-587-S, 2007 WL 3342368 (W.D. Ky. Nov. 7, 2007), are inapposite in that none considered a contract of safe passage claim.

certainly tortious, it is not contended that Community Cab actually committed those actions. Rather, its alleged liability is based upon its employment of Abukar. The channel of that liability is based upon Community Cab's oral contract with Kendall and its corresponding duty of safe passage implied by that contract. Accordingly, Kendall's damages are those which arose from Community Cab's alleged breach of its duty of safe passage, as Kendall's passage was most assuredly not safe. Consequently, the trial court erred by summarily dismissing her claim under CR 12.02(f). Kendall has a right to present her proof to support her cause of action for breach of contract. If she is able to prove such breach, then the trier of fact may determine appropriate compensatory damages—including reparation for physical injury. However, we offer no opinion as to the merits of Kendall's claim as that issue is not before us.

Therefore, the order of the Kenton Circuit Court dismissing Kendall's action against Community Cab is reversed, and the matter is remanded to the court for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:                  BRIEF FOR APPELLEES:

Haley S. Stamm                         Ahmed C. Hassan
Fort Mitchell, Kentucky                Cincinnati, Ohio