# Kentucky Block Fuel Company v. Roberts.

(Decided February 3, 1925.)

## Appeal from Pike Circuit Court.

1. Adverse Possession—Title to Land May be Shown by Adverse Possession.—In action for injury to land by obstruction of stream, title to land may be shown by adverse possession.

2. Adverse Possession—Grant from Commonwealth Presumed from Long Undisputed Possession.—Grant from Commonwealth is presumed from long undisputed possession of land.

3. Adverse Possession—Title May be Shown by Adverse Possession Under General Allegation of Ownership.—Plaintiff suing for injury to land from obstruction of stream may show title by adverse possession under a general allegation of ownership.

4. Adverse Possession—Refusal of Peremptory Instruction for Defendant, on Ground that Plaintiff had Not Proved Title to Damaged Land, Held Not Error.—In action for damage to land from obstruction of creek, deed and plaintiff's testimony, without cross-examination, that land described therein included the land in controversy, and testimony showing his possession for 15 consecutive years, held to warrant denial of peremptory instruction.

5. Waters and Water Courses—Mine Operator Depositing on Own Land Refuse Swept into Creek Liable for Damage by Overflow, Only if Negligent.—Where coal mine operator deposited slate and refuse at dump held by bench or shoulder, and landslide swept shoulder away so that water from mountain side carried slate and refuse into creek, obstructing its channel and causing water to overflow plaintiff's land, mine operator was liable, only if it should reasonably have anticipated, in the exercise of ordinary care, that shoulder would be swept away.

6. Waters and Water Courses—Mine Operator's Negligence in Depositing on Own Land Refuse Carried into Creek Held for Jury.—Where coal mine operator deposited on its own land slate and refuse which was carried into creek, obstructing its channel and causing water to overflow plaintiff's land, after landslide had carried away shoulder of dump, question whether mine operator was negligent in not anticipating that shoulder would be swept away, and that refuse would be carried into creek, held for jury.

7. Damages—$600.00 for Damage to Strip of Land from Overflow of Creek Held Excessive.—Verdict of $600.00 for damage to strip of land 10 feet wide and 100 feet or less, long, lying between county road and creek, caused by overflow of creek, held excessive.

MOORE & CHILDERS for appellant.

STRATTON & STEPHENSON and PICKLESIMER & STEELE for appellee.

Opinion of the Court by Commissioner Hobson—Reversing.

W. J. Roberts owns a farm on Shelby creek in Pike county. The Kentucky Block Fuel Company operates a coal mine on the opposite side of the creek from Roberts. He brought this suit against it alleging that in connection with its mines it maintained a slate refuse dump on what is known as the Pink Mullins hollow, where large quantities of slate, rock and refuse matter from its mines were carelessly dumped by it to such an extent that the hollow would not hold same and this matter washed into Shelby creek and clogged up the channel opposite plaintiff's land, causing the waters of Shelby creek to cut into plaintiff's land and wash away a corn crib, shuck pen, toilet house, a foot bridge, apple trees and other timber belonging to the plaintiff, to his damage in the sum of $3,000.00. The defendant filed an answer controverting the allegations of the petition and pleading that the slate, rock or refuse matter was washed out of the hollow by the act of God and without any negligence or want of care on its part. It also denied Roberts' title to the land and pleaded that the slate was washed out of the hollow on account of a slip at the top of the mountain above the dump and that the defendant did nothing to cause the slip at the top of the mountain; that the slate wasn't dumped in the hollow but placed upon its own land on a flat on the side of the mountain, which was from fifty to seventy-five feet from the channel of the branch. It also pleaded that the washing of plaintiff's land was caused by a foot bridge which he himself erected and negligently maintained. On the trial of the case there was a verdict in favor of the plaintiff for $600.00. Judgment was entered on the verdict and defendant appeals.

The first question made on the appeal is, that the plaintiff did not show title to the land. Put in narrative form his testimony is in these words: "I reside across the creek from the operations of the Kentucky Block Fuel Company, have resided there with my family since 1883, with the exception of about four years we moved away. I have a deed for the property which I now produce and read. That is the land that I live on. That deed covers every foot of the land complained about. I moved on the land in February, 1883, and have lived there since, except the four years that I told you about."

It is insisted that as the witness does not tell what four years he was away he does not show that he has been in possession of the land consecutively for any fifteen years, but the natural meaning of his words is that he was away four years at one time, and as it was about forty years since he moved on the land and he had only been away four years in that time he must have been there fifteen years consecutively at one time if the four years' absence was all at one time. A title to land may be shown by adverse possession, for from long undisputed possession a grant from the Commonwealth is presumed, and the title to land may be shown in this way no less than by a grant from the Commonwealth. Under a general allegation of ownership the plaintiff may show title by adverse possession. Asher v. Howard, 122 Ky. 178-179, and cases cited; City of Cadiz v. Hillman, 50 S. W. 59; Deweese v. Maxwell, 125 S. W. 145, do not conflict with this rule.

The plaintiff only introduced in evidence the deed made to him by James J. Greer. In that deed following the boundary of the land are these words: "So as to include all the patented land in said boundary." It is earnestly insisted that the patent not being introduced there is no evidence that the deed includes the land in controversy. But the plaintiff unequivocally testified that it did include all the land in controversy and there was no cross-examination on this or any effort to show that he did not know what land the deed included. He could maintain the action upon adverse possession as above stated, although his deed did not include the land. There was no error, therefore, of the court in refusing to instruct the jury peremptorily to find for the defendant.

The court gave the jury this instruction:

"The court tells the jury that if they believe from the evidence in this case that the defendants, by their servants, agents or employes, threw or caused to be thrown, carried or placed rocks, dirt, coal, rubbish or other obstructions, into Shelby creek and thereby diverted the stream of said creek towards the lands of plaintiff and caused the waters to overflow and wash away the buildings, apple trees and lands of plaintiff, the law is for the plaintiff and the jury will so find. But unless they so believe they will find for the defendant."

It refused an instruction asked by the plaintiff telling the jury that the defendant had the right to throw the slate, shale and refuse from its mine upon the surface of the ground covered by its lease, provided it used ordinary care to so place such refuse that it would not injure the property of another.

The effect of the instruction as given was that the defendant was liable at all events for the damage done plaintiff if the refuse was carried into the creek, although there was no negligence on the part of the defendant.

The proof for the defendant showed these facts: The dump was located on the watershead of Pink Mullins hollow about 300 feet from Shelby creek. It covered about an acre and was about two feet thick. It rested on a rise in the ground about thirty feet wide covered with trees, some of which were two feet in diameter. The rise was high enough to hold the dump and prevent any of it going into the branch as long as it existed. But about March 1, 1922, an earth slide 50 feet wide and 100 feet long caused by excessive rains started on the mountain side about 100 feet above the slate dump and came rolling down, bringing with it a large amount of earth, trees and boulders. It swept away the bench or shoulder at the foot of the dump with the trees on it and went on down the hollow, carrying with it appellant's concrete powder house, which was several feet below the slate dump. Eight or ten days after this there came another unusually hard rain; the shoulder that had held the slate dump having been torn away, there was nothing to hold the slate and it was carried by the water into the branch which flowed down the hollow and down the branch into Shelby creek.

In Crabtree Coal Co. v. Hamby, 90 S. W. 226, the case before the court is thus stated by it:

> "The sum of the case is that the coal company deposited a large pile of slack on the bank of Sugar creek above Hamby's land, where it would naturally wash into the creek, and deposited a large quantity of slack along its right of way where it would naturally wash over Hamby's land."

On these facts the coal company was held liable to Hamby for the damage done his land; for in that case it appeared that what had followed was the natural result of what the defendant did and what a man may not do

directly he may not do indirectly. That case was followed in Nebo, &c., Coal Company v. Lynch, 141 Ky. 711, and North Jellico Coal Company v. Trosper, 165 Ky. 417. But none of these cases touches the question presented here. Coal is a necessity of modern life. To have coal we must have coal mines operated; but coal mines cannot be operated without a dump where the slate and other refuse which comes out with the coal may be placed. So every coal mine maintains a dump. In Rylands v. Fletcher, 1 Eng. Rul. Cas. 235, it was held that one who constructs on his own land a water reservoir is answerable to his neighbors for damages done by the escape of the water, although without negligence on his part. This rule has been followed in numerous cases where water, oil, gas or other liquids have escaped from a reservoir. But slate, rock and other such refuse that comes out of a coal mine are solid, and it is by no means clear that the courts would have applied the same rule to such substances. In 20 R. C. L., p. 74, the rule is thus stated:

> "In a sense every person has an absolute right to use his property as he sees fit, and may perform thereon any and all acts whatsoever, without let or hindrance. It has been found expedient, however, to restrict this right by the principle expressed in the maxim *sic utere tuo ut alienum non laedas;* and a further restriction arises when the use of the property becomes what is termed a nuisance. There is also a well recognized class of cases which hold that a person who, for his own purposes, brings on his lands, and collects and keeps there, anything likely to do mischief if it escapes, must keep it at his peril. . . . But where the escape of the dangerous substance from the defendant's premises is due to the plaintiff's own fault, or of *vis major,* the act of God, or the acts of third parties which the defendant had no reason to anticipate, no liability exists."

In this case the dump of slate, rock and refuse could never have moved as long as the bench or shoulder below it remained. This rise in the ground was natural, and unless in the exercise of ordinary care and prudence the defendant should reasonably have anticipated that it would be swept away, the defendant had a right to dump its refuse as it did. If in the exercise of ordinary care and prudence it should reasonably have an-

ticipated that by a landslide the shoulder would be swept away and that then the refuse matter would be taken into the creek, it should not have made the dump there and is liable herein. This is a question for the jury under all the evidence.

The proper rule as to the liability of the owner for such dump so placed on his own land is, it seems to us, thus expressed in 1 Thompson on Negligence, section 694:

"In the prosecution of any lawful work upon his own premises, he may indeed make use of dangerous agencies which, unless carefully guarded and restrained, are liable to work injury to his neighbor. The right which the law accords him of making use of such agencies is qualified by the obligation of exercising in their use, to the end that their use shall not injure his neighbor, a degree of care commensurate with the danger which their use entails."

The loss shown is a strip of ground 10 feet wide, 100 feet long or less, lying between the county road and the creek. It is hard to see how the damage could be $600.00, under the evidence. The verdict is excessive.

Judgment reversed and cause remanded for a new trial.