## Lincoln Coal Company v. Deaton.

(Decided May 7, 1929.)

J. W. CRAFT for appellant.

D. G. BOLYEN for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Counsel for appellee have not favored us with brief in this case. The appellant urges a number of grounds for reversal. It is engaged in the business of mining coal on the North fork of the Kentucky river in Perry county. The line of railroad over which it ships its coal is on the opposite side of the river, as is also the tipple of appellant. In the year 1918 appellant constructed a suspension bridge across the river from its coal mines to its tipple.

The appellee owns a tract of land on the North fork of the Kentucky river located on the opposite side of the river from the mines of appellant, and about 700 feet further down the river. In 1927 she filed her action in the Perry circuit court alleging that the appellant constructed the bridge, and that it did so in a negligent manner and so maintained it that the natural flow of the water in the river had been diverted so that it flowed with force over and against her tract of land, and that as a result of the change in the course of the current thus brought about, a portion of her tract of land and the improvements thereon had been damaged. She sought to recover the sum of $2,000. In response to a motion by appellant asking that her petition be made more specific, she filed an amendment alleging that the damage had been done to her land by reason of the diverted current from and including the year 1924 down to the date that she filed her suit.

The appellant first satisfied itself by making its answer a traverse of the petition, but, at the conclusion of the evidence, it amended its answer alleging that if the land of appellee had been damaged by the water such damage was brought about solely by excessive rainfalls, and by tides in the river caused by such rainfalls, and not by any negligence on the part of appellant in the construction or maintenance of its bridge. It also alleged in this amendment that the damage had been caused more than five years before the institution of the action, and it relied on the statute of limitations in such cases made and provided.

The questions were submitted to the jury, which returned a verdict in favor of appellee for $500. The appellant relies on four grounds for reversal: (1) That the trial court erred in not sustaining its motion for an instruction directing the jury to return a verdict in its favor. (2) Because the verdict is not sustained by sufficient evidence. (3) Because the trial court erred in giving instruction No. 1 to the jury. (4) Because the damages were excessive.

Whether a peremptory instruction should have been given directing the jury to return a verdict for appellant depends upon whether there was any proof offered by appellee to sustain her cause of action alleged in the petition. She testified that at the time the bridge was constructed in 1918 there was a row of willow trees and other trees on the bank of the river, and that these trees protected her land from the ravages of the current for some years. But the current largely caused the excavation under these trees about four years before the institution of her action, and thereafter her land was eaten away from year to year by the diverted current. She admitted that there had been several high tides in recent years which had caused the water to flow upon and over her land, but she stuck to her story that the damages were caused by reason of the diverted flow of the current. She described how the damages were caused in this language: ''Well, they built a pillar in the middle of the river, and the water goes through on each side of it, and makes it go in a swirl to the mouth of the creek.'' Again she says that the middle pier in the bridge ''makes the water swirl around on my land.''

In the years from 1918 to 1924 the current washed over her river banks and against them, but it only washed the top off in these years, but later the water began to

force a recession of her banks into her bottom until more than one acre of her rich alluvial land had been destroyed. Her house was some distance from the river before the banks were made to recede, but at the time she testified it was within 8 or 10 feet of the bank and she lived in constant dread that her house might tumble into the river. When the water rose she left home on account of the fact that her house might fall in. Her testimony is not free from contradictions, but the court has no difficulty in visualizing the condition which she describes. The current, according to her testimony, did not flow against her farm until the bridge was built and the middle pier put in.

She was corroborated in her testimony by her brother, who went more into detail about the changing of the current. Whether it be true or not we do not know, but these two witnesses testified that the erection of the pier in the center of the river diverted the course of the water from its natural channel, and, as a result, more than an acre of her land had been destroyed, and the residue had been damaged because of the moving back of the bank into her farm.

The appellant introduced a number of witnesses who testified intelligently that the pier in the middle of the river, 30 feet long and 7 or 8 feet wide, did not divert the current to appellee's side of the river. They stated that the natural flow of the current was against the banks abutting the farm of appellee, and that the erection of the pier had a tendency to divert the natural flow of the water towards the bank of the river opposite her farm. The evidence for appellant is more satisfactory to us, and less contradictory than the evidence of appellee; but the jury is the tribunal which determines the best it can what the truth is when witnesses disagree. The jury having decided that the damages were caused by the diverted flow of the current caused by the erection of the pier, we cannot say there is no evidence, or not sufficient evidence, to support the verdict.

Appellant relies on the case of Fordson Coal Co. v. Pleasnick, 215 Ky. 794, 287 S. W. 11. The basis of that suit was that the negligent construction of a bridge had obstructed the natural flow of the water causing the stream to overflow the premises of the plaintiff, and to submerge in part her residence. The defense was that the obstruction did not cause the submergence of her residence, but that it was caused by unusual rainfall, and

the evidence sustained the defense, so it was found by this court. The decision in that case was based on the opinion in the case of L. & N. R. R. Co. v. Conn, 166 Ky. 327, 179 S. W. 195. That was another case where it was held that one who constructs a bridge over a stream is liable only in the event that the bridge obstructs the passage of water that accumulates from such ordinary and usual railfalls in the vicinity as might have been anticipated by persons of ordinary prudence and experience. It was held that he who constructs a bridge is not liable for damages growing out of overflows caused by unusual rains or floods. The opinions in these cases fit the facts then before the court, but the evidence in the case before us is conflicting on that point, as the appellee placed before the jury evidence tending to show that the destruction of a part of her land was a gradual and continuous process. The high tides may have caused a part of the damages, but if the pier in the middle of the river was the cause of the flowing of the high tides against her property, she was none the less entitled to have her case considered by the jury.

The appellant contends that there was no proof of negligence in the construction of the pier, and that under the authority of the opinion in Louisville Gas Co. v. Kaufman, 105 Ky. 131, 48 S. W. 434, 20 Ky. Law Rep. 1069, and many other cases, there can be no recovery when the question is one of negligence or no negligence, and the evidence is equally consistent with either the existence, or nonexistence, of negligence. The law does not fit this case. If appellant damaged the farm of appellee by its act of diverting the flow of the river, nothing else need be shown.

We have disposed of the two first grounds relied on by appellant for reversal adversely to it, but it urges as its third ground that the first instruction was erroneous. This instruction briefly told the jury that if it believed from the evidence that appellant negligently constructed the bridge so that it diverted the natural flow of the water, and that the water was thereby caused to flow on to, against, and over appellee's land in larger quantities, or with greater force, than it did prior to the construction and erection of the bridge, and that her land was thereby cut and washed away, the jury should find for appellee; but that if it did not so believe that it should find for appellant. Appellant says, in its brief, that there is no allegation in the petition justifying such an instruc-

tion, but the instruction literally follows the language of the petition and amended petition. Counsel for appellant say there was no evidence tending to show that the water was diverted from its natural course, or that it flowed against and over appellee's land in larger quantities or with greater force than prior to the construction of the bridge. We have disposed of that point and will not again consider it. It is true that instructions must be based on the pleadings, or directly refer to the issues made by the pleadings, as was held in the case of Illinois Canning Co. v. N. Livingston & Co., 201 Ky. 756, 258 S. W. 308, and many other cases to the same effect. The instruction was not without pleadings and evidence to support it.

The last ground urged for reversal is that the damages awarded by the jury are excessive. Appellee and her witness testified that more than an acre of her land had been entirely destroyed, and that its value alone was $300 per acre. Other witnesses placed the value as low as $200 per acre. It is true that the witnesses for appellant said that no more than 1/10 of an acre had been destroyed, but appellee proved that as much as 1¼ acres had been destroyed. The proof as to the value is much stronger than in the case of Kentucky Block Fuel Co. v. Roberts, 207 Ky. 137, 268 S. W. 802. If appellee was entitled to recover at all, and the jury found that she was, the amount of her damages was conservative.

Judgment affirmed.